# United States Court of Appeals
## For the First Circuit

No. 08-2463

UNITED STATES OF AMERICA,

Appellee,

v.

ONEIDA CARRASCO-DE-JESÚS, a/k/a BRENDA RÍOS-GONZÁLEZ,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

[Hon. Gustavo A. Gelpí, U.S. District Judge]

Before

Selya, Lipez and Howard, Circuit Judges.

Mariángela Tirado-Váles on brief for appellant.
Rosa Emilia Rodriguez-Vélez, United States Attorney, Nelson Pérez-Sosa, Chief, Appellate Division, and Julia M. Meconiates, Assistant United States Attorney, on brief for appellee.

December 11, 2009

**SELYA**, **Circuit Judge**.  Defendant-appellant Oneida Carrasco-de-Jesús, also known as Brenda Ríos-González, attacks her sentence as both procedurally flawed and substantively unreasonable.  Concluding, as we do, that her attack lacks force, we affirm.

## I.  BACKGROUND

A federal grand jury in the District of Puerto Rico charged the appellant with participation in a conspiracy to issue and use counterfeit checks.  See 18 U.S.C. §§ 371, 513.  After some preliminary skirmishing, not relevant here, the appellant pleaded guilty pursuant to a negotiated plea agreement (the Agreement).  We draw the background facts from the Agreement, the transcripts of the change-of-plea and sentencing hearings, and the amended presentence investigation report (PSI Report).  See United States v. Calderón-Pacheco, 564 F.3d 55, 56 (1st Cir. 2009); United States v. Dietz, 950 F.2d 50, 51 (1st Cir. 1991).

Given the circumscribed nature of the issues on appeal, we can succinctly summarize the events leading up to the indictment.  For roughly a year, the appellant and two cohorts conspired to make counterfeit checks purporting to originate with banks (specifically, Banco Popular and FirstBank).  The coconspirators passed these bogus checks at various mercantile establishments in Puerto Rico.

In general, the scheme operated along the following lines. A coconspirator, Josué Francisco-Serrano Nieves, would produce counterfeit checks bearing the actual name and routing number of one of the banks along with a fictitious account number. Another coconspirator (either the appellant or Heilmary Rodríguez) would then visit a retail emporium (e.g., Sears, Office Max, Pep Boys), purchase merchandise, and pay with a home-made check.

The coconspirators acquired goods worth many thousands of dollars before the authorities cracked the case. A federal indictment was returned while the appellant was in custody in a Puerto Rican penitentiary, and the district court issued a writ of habeas corpus ad prosequendum to secure her appearance in the district court. The appellant's guilty plea followed apace.

This brings us to the Agreement, which stipulated a base offense level (BOL) of six for the offense of conviction (the counterfeiting conspiracy). See USSG §2B1.1(a)(2). The government agreed to recommend a sentence at the lower end of the applicable guideline sentencing range (GSR). To assist in establishing that range, the district court directed the probation department to prepare a PSI Report.

Determining that the amount of loss attributable to the conspiracy exceeded $30,000, the probation officer added six more levels to the stipulated BOL. See id. §2B1.1(b)(1)(D). Because the appellant accepted responsibility for the offense of conviction, she

-3-

received a two-level credit. See id. §3E1.1(a). Her adjusted offense level was, therefore, ten.

The appellant had only two countable criminal history points accruing directly from past offenses. At the time of federal sentencing, however, she had begun to serve two-year concurrent Puerto Rico sentences for having (i) passed a fraudulent check in the sum of $101.60 and (ii) furnished false information to public officials in order to procure an electoral card that she then used to facilitate the check-passing crime. These offenses did not impact her criminal history score because the probation officer classified them as relevant conduct with respect to the federal offense. See id. §1B1.3; see also United States v. Eisom, ___ F.3d ___, ___ (1st Cir. 2009) [2009 WL 3669746, at *4] (explicating relevant conduct concept). Nevertheless, two more criminal history points were added because the appellant was under a term of probation when she committed the federal offense. USSG §4A1.1(d).

The net result of these computations was the appellant's placement in criminal history category III. Combined with her adjusted offense level (ten), this placement yielded a GSR of ten to sixteen months.

The appellant was detained pursuant to the previously mentioned writ of habeas corpus from February 8, 2008, until after sentencing. The parties agree that this period of detention counted

-4-

toward her fulfillment of her Puerto Rico sentences but did not count toward her sentence for the offense of conviction.

The district court conducted a disposition hearing on October 14, 2008. The appellant beseeched the court to impose a ten-month prison term, concurrent with the undischarged portion of her Puerto Rico sentences. The court expressed concern about a concurrent sentence, noting that the Puerto Rico offenses involved a particularly serious matter: electoral fraud. The court worried that yielding to the appellant's importunings would reduce the earlier sentences to a "slap on the wrist." In addition, the court commented that the federal sentencing guidelines attached a similar degree of seriousness to the offense of conviction.

Citing USSG §5G1.3(b), discussed infra, the appellant countered that the court was under a "mandate" to impose a concurrent sentence. The government suggested that the matter was within the court's discretion. The court concluded that it had discretion to impose a concurrent sentence, but found that the totality of the circumstances militated against doing so. The court then imposed an incarcerative sentence of twelve months and one day, to run consecutively to the undischarged portion of the appellant's Puerto Rico sentences. This timely appeal followed.

## II. DISCUSSION

Three issues warrant discussion. The first involves the effect of a waiver-of-appeal provision contained in the Agreement.

-5-

The second involves the sentencing court's failure to fashion a concurrent sentence. The third involves the reasonableness of the sentence ultimately imposed. We address these issues sequentially.

### A. **Waiver of Appeal**.

The Agreement contains, inter alia, the following paragraph:

> The defendant hereby agrees that if this Honorable Court accepts this plea agreement and sentences her according to its terms, conditions, and recommendation, the defendant waives and surrenders her right to appeal the judgment and sentence in this case.

The appellant argued in her opening brief that this provision was a nullity because the lower court neither sentenced her in accordance with the Agreement nor used the concurrent sentence mechanism. While this argument may not be foolproof — the Agreement left open the criminal history category calculation; that calculation, combined with the stipulated offense level, yielded a GSR of ten to sixteen months; and the sentence imposed is arguably at the "lower end" of that range — we need not delve into it. By eschewing any reliance on the waiver-of-appeal provision, the government has rendered that analysis superfluous.

The intentional relinquishment of a known right results in a waiver. Eisom, ___ F.3d at ___ [2009 WL 3669746, at *2] (citing United States v. Olano, 507 U.S. 725, 733 (1993)). In criminal cases, waiver doctrine is commonly invoked to bar a defendant's assertion of a claim. See, e.g., id. Nevertheless,

-6-

what is sauce for a defendant's goose is most often sauce for the government's gander. In line with that precept, waiver doctrine has been applied against the government in criminal cases, where appropriate.[1] See, e.g., United States v. Moran, 393 F.3d 1, 11 (1st Cir. 2004).

Where, as here, the government's relinquishment of a known right relates to a waiver-of-appeal provision in a plea agreement, there is usually little reason to disregard that election. Cf. United States v. Guadelupe-Rivera, 501 F.3d 17, 20 n.3 (1st Cir. 2007) (accepting the government's concession at oral argument anent the unenforceability of a particular waiver-of-appeal provision).

Here, the government affirmatively disclaimed the waiver-of-appeal provision, see Appellee's Br. at 6 n.3, and we see no justification for proceeding sua sponte to inquire into its preclusive effect.

### B. Procedural Reasonableness.

The appellant asseverates that the challenged sentence is procedurally unreasonable because the sentencing court failed

---

[1] Of course, we have discretion to overlook waiver by the government in a criminal case when circumstances justify us in doing so. See United States v. Borrero-Acevedo, 533 F.3d 11, 15 n.3 (1st Cir. 2008); United States v. Rose, 104 F.3d 1408, 1414 (1st Cir. 1997); see also United States v. Moran, 393 F.3d 1, 11 (1st Cir. 2004) (acknowledging this discretion, but declining to exercise it). There is nothing in the record of this case that commends such a practice to us.

properly to apply USSG §5G1.3(b). Before considering the substance of this asseveration, we comment upon the standard of review.

In United States v. Booker, 543 U.S. 220 (2005), the Supreme Court effected a sea change in the law of federal sentencing. Booker made it pellucid that the sentencing guidelines were advisory and that appellate courts should review sentences for reasonableness. Id. at 245, 260-61. In a subsequent case, Gall v. United States, 552 U.S. 38 (2007), the Court clarified that reasonableness review is functionally equivalent to review for abuse of discretion. Id. at 51. The Justices mapped out a bifurcated process for assessing the reasonableness of a sentence: an inquiring court first should determine whether the sentencing court committed any procedural error[2] and, second, should evaluate the sentence's substantive reasonableness. Id.

The appellant's section 5G1.3(b) claim is a claim of procedural unreasonableness. See United States v. Cruz-Rodríguez, 541 F.3d 19, 35 (1st Cir. 2008). At a high level of generality, it may be said that rulings challenged as procedurally unreasonable are subject to review for abuse of discretion. See United States v. Martin, 520 F.3d 87, 92 (1st Cir. 2008). But abuse of discretion

---

[2] The Court listed several examples of procedural error, such as "failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence — including an explanation for any deviation from the Guidelines range." Gall, 552 U.S. at 51.

-8-

is not a monolithic standard. Within its margins, embedded issues may receive attention under more narrowly focused standards. Thus, embedded questions of law engender de novo review and embedded findings of fact engender clear-error review. See Nat'l Ass'n of Chain Drug Stores v. New Eng. Carps. Health Benefits Fund, 582 F.3d 30, 45 (1st Cir. 2009); see also United States v. Snyder, 136 F.3d 65, 67 (1st Cir. 1998) (explaining that review of legal error is non-deferential and that a district court perforce abuses its discretion when it commits a material error of law). Because the claim of error now before us rests upon the interpretation of a guideline provision, that claim engenders de novo review. See United States v. Vasco, 564 F.3d 12, 22 (1st Cir. 2009); United States v. Rivera, 448 F.3d 82, 84 (1st Cir. 2006); see also United States v. Robinson, 433 F.3d 31, 35 (1st Cir. 2005) (holding that Booker did not alter the standard of review for claims that require a determination of the meaning of a sentencing guideline).

Against this backdrop, we turn to the appellant's claim that USSG §5G1.3(b) required the court below to impose a concurrent sentence.

A sentencing court's choice between a consecutive or a concurrent sentence with respect to a defendant who is subject to an undischarged state-court term of imprisonment is normally discretionary. See 18 U.S.C. § 3584(a). But when exercising its discretion, the sentencing court is under a direction to consider

the factors enumerated in 18 U.S.C. § 3553(a), including any applicable sentencing guidelines or policy statements. <u>Id.</u> § 3584(b).

One such guideline is USSG §5G1.3(b), which provides, with various exceptions, for a concurrent or partially concurrent sentence when there is a previously imposed but undischarged term of imprisonment that has "resulted from another offense that is relevant conduct to the instant offense of conviction" if the relevant conduct offense "was the basis for an increase in the offense level" for the offense of conviction.

Section 5G1.3(b) sets up a tightly imbricated framework, and this case does not require us to sketch its complete architecture. For present purposes, it suffices to say that, in order to gain its benefit, a defendant must prove that she satisfies each and every element of the guideline. <u>See</u> <u>United States</u> v. <u>Lino</u>, 493 F.3d 41, 44 (1st Cir. 2007). One such element is whether the relevant conduct offense — that is, the offense underpinning the undischarged term of imprisonment — was the basis for an increase in the offense level for the offense of conviction. <u>See</u> <u>id.</u>; <u>United States</u> v. <u>Rouse</u>, 362 F.3d 256, 261 (4th Cir. 2004).

As said, a bogus check for $101.60 underpinned in part the convictions on which the appellant's earlier Puerto Rico sentences were based. The appellant contends that this check was considered as an overt act of the charged conspiracy and formed part of the

basis for the six-level increase in her offense level.  See USSG §2B1.1(b)(1)(D) (providing for such an increase if the loss attributable to the offense of conviction and all relevant conduct exceeds $30,000).

The factual predicate on which this contention depends is disputed.  The government maintains that the check for $101.60 was not used at all in calculating the amount of loss (and, thus, in setting the adjusted offense level).  To prove this point, the government attached to its opening brief in this court a copy of the ledger purportedly used in preparing the relevant section of the PSI Report.  The appellant objects to this proffer.  That objection is well-taken.  Because the ledger was not made part of the record in the court below, what we wrote in United States v. Kobrosky, 711 F.2d 449 (1st Cir. 1983), is dispositive here:

> We are an appellate tribunal, not a nisi prius court; evidentiary matters not first presented to the district court are, as the greenest of counsel should know, not properly before us.

Id. at 457.  The government, in a supplementary brief, now concedes this point.

Even with the exclusion of the ledger, the appellant is still in deep water.  A defendant bears the burden of proving the applicability of a guideline provision that will ameliorate her sentence.  See United States v. McLaughlin, 378 F.3d 35, 39 (1st Cir. 2004); United States v. Sanchez, 354 F.3d 70, 74 (1st Cir. 2004); United States v. Mangos, 134 F.3d 460, 466 (1st Cir. 1998).

-11-

In this instance, that burden requires the appellant to show, among other things, that the check for $101.60 was used in calculating her adjusted offense level. The record is utterly silent on this subject;[3] there is no hint that the $101.60 check was used to enhance the appellant's offense level. A lack of evidence on a critical point is an insurmountable obstacle for the party who has the burden of proof on that point. Consequently, the silent record, in itself, defeats the appellant's claim.

Even had the $101.60 check been used in computing the amount of loss, the appellant's claim would not succeed. According to unrebutted arithmetic in the PSI Report, the aggregate loss in this case exceeded $50,000. The threshold for the six-level offense level increase was $30,000. Thus, the check for $101.60, even if counted, could not properly be said to have formed the basis for an offense level "increase" within the meaning of USSG §5G1.3(b). We explain briefly.

The term "basis" denotes a foundation or support on which something else rests. See Webster's Third New Int'l Dict. 182 (2002) (defining "basis" as "the bottom of anything considered as a foundation for the parts above"); Black's Law Dict. 171 (9th ed. 2009) (defining "basis" as "an underlying condition"). Consistent

---

[3] To be sure, the $101.60 check is mentioned once in the amended PSI Report — but only as an overt act of the conspiracy. It is not mentioned in connection with the offense level computation.

with this definition, the Sentencing Commission itself appears to regard the "basis" language as causal. See USSG §5G1.3(b), cmt. n.2(A) (explaining that section 5G1.3(b) applies in cases in which "the prior offense . . . has resulted in an increase in the . . . offense level for the instant offense" (emphasis supplied)). Courts have taken the same approach. See, e.g., Rouse, 362 F.3d at 261 (contrasting the plain language of the current guideline with the fact that "[p]rior to the amendment, a prior offense could be 'fully taken into account' even if inclusion of the offense as relevant conduct did not effect a change in the defendant's offense level"). In short, the text of the guideline is inconsistent with an interpretation, such as that urged by the appellant, under which an incremental loss that would not have affected the offense level could nonetheless be regarded as forming the "basis" for an increase in that level.[4] We fail to see how an item of loss that has no effect on the offense level can serve as the "foundation" of that level.

We hold, therefore, that USSG §5G1.3(b) did not require the district court to impose a concurrent sentence in this case.

---

[4] In United States v. Caraballo, 200 F.3d 20, 26 n.9 (1st Cir. 1999), we reached a somewhat different decision, but we did so under a different version of the guideline. See USSG §5G1.3(b) (1998). That earlier version was modified by the Sentencing Commission's promulgation in 2003 of Amendment 660. That amendment clarified the guideline's meaning and made Caraballo something of an anachronism. See Lino, 493 F.3d at 45. It is the clarified version of the guideline with which we are concerned.

The appellant's claim of procedural unreasonableness has another dimension.  She asserts that the sentencing court erred in failing to consider the factors made relevant to the sentencing determination by 18 U.S.C. § 3553(a).[5]  Assuming, without deciding, that this claim of error has been preserved, we find it groundless.

The court's statement of its reasons for its choice of a sentence plainly takes into account the section 3553(a) factors. For example, the court explicitly considered the appellant's troubled childhood, difficult family circumstances, and other personal characteristics.  In the last analysis, however, the court attached more weight to the appellant's extensive criminal history, the seriousness of her past and present crimes, her failure to capitalize on previous opportunities for rehabilitation, the need for deterrence, and society's interest in promoting respect for the law.  The court also appears to have found that the appellant's non-federal crimes were distinct from her federal crime.

---

[5] These factors include:
(1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed — (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; . . . (6) the need to avoid unwarranted sentence disparities among defendants with similar records . . .; and (7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

A criminal defendant is entitled to a weighing of the section 3553(a) factors that are relevant to her case, not to a particular result. Here, the sentencing court's careful consideration of the statutory factors and its explanation of its reasoning satisfy the obligations imposed by section 3553(a).

The bottom line, then, is that the sentencing court had discretion to impose either a consecutive or a concurrent sentence. See USSG §5G1.3(c); see also USSG §5G1.3, cmt. (backg'd.) (2007). The court studied that choice and, for aught that appears, weighed all the appropriate factors. Its declination to impose a concurrent sentence was a quintessential judgment call, free from procedural error.

## C.  **Substantive Reasonableness**.

The appellant's final claim of error challenges the substantive reasonableness of the district court's decision to run the sentence consecutively. In particular, she posits that the sentence violates the parsimony principle of 18 U.S.C. § 3553(a), which states that the sentence imposed should be "sufficient, but not greater than necessary." In her view, the "appropriate total punishment" for her aggregate convictions (Puerto Rico and federal) should have been no more than twelve months and one day. The only way for the district court to effectuate that modest level of punishment would have been to make her sentence concurrent with the undischarged portion of her Puerto Rico sentences.

We need not tarry. The appellant's argument misreads the district court's comments at the disposition hearing. The court did not declare that twelve months and one day was a sufficient period of immurement for all of the crimes but, rather, determined that the offense of conviction alone warranted incarceration of that duration.

Second — and dispositively — a sentencing court's ultimate responsibility is to articulate a plausible rationale and arrive at a sensible result. See Martin, 520 F.3d at 91. Here, the court voiced its concern that the GSR understated the severity of the offense of conviction and pointed out that if it were to impose a concurrent sentence, the appellant would in effect get a free ride (or nearly a free ride) with respect to the offense of conviction; that is, she would serve no time for that offense beyond what she was bound in any event to serve for the Puerto Rico convictions. Given all of the circumstances, the court determined that the case warranted a consecutive sentence of twelve months and one day. This sentence, plausibly explained, fell comfortably within the universe of reasonable alternatives available to the sentencing court. No more is exigible. We hold, without serious question, that the challenged sentence is not substantively unreasonable.[6]

---

[6] The appellant alludes to the unpublished decision in United States v. Díaz-Fontánez, 317 F. App'x 9, 10 (1st Cir. 2008), to support her argument that a concurrent sentence would have achieved the appropriate total punishment. That allusion compares plums with pomegranates. In Díaz-Fontánez the government had stipulated

-16-

## III. CONCLUSION

We need go no further.  For the reasons elucidated above, we conclude that the district court did not commit an abuse of discretion and, therefore, uphold the challenged sentence.

**Affirmed**.

---

to the fact that the conduct underlying the prior state conviction was the basis for an increase in the offense level referable to the federal offense.  That is quite different from the situation here.