# United States Court of Appeals

## For the First Circuit

No. 09-1693

UNITED STATES OF AMERICA,

Appellee,

v.

ROBERT DUNBAR,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Nathaniel M. Gorton, U.S. District Judge]

Before

Boudin, Circuit Judge,
Souter,* Associate Justice,
and Howard, Circuit Judge.

Judith H. Mizner, Assistant Federal Public Defender, Federal Defender Office, for appellant.
Thomas E. Kanwit, Assistant United States Attorney, with whom Carmen M. Ortiz, United States Attorney, was on brief for appellee.

October 26, 2011

---

*The Hon. David H. Souter, Associate Justice (Ret.) of the Supreme Court of the United States, sitting by designation.

**Per Curiam**.  Robert Dunbar robbed a federally-insured bank in East Bridgewater, Massachusetts, and fled in a stolen car. During the ensuing police pursuit, Dunbar crashed head-on into a car driven by a teenage girl, who sustained serious injuries. State and federal authorities prosecuted Dunbar separately.  This appeal raises the question whether the federal sentencing guidelines require that the time Dunbar had already served on his state sentences be credited toward his federal career-offender sentence.

Dunbar was sentenced in state court in December 2008, where he was convicted of resisting arrest, receiving a stolen vehicle, operating a motor vehicle under intoxication causing serious bodily injury, reckless operation of a motor vehicle, refusing to stop for a police officer, and operating a vehicle with a suspended license.  The state court sentenced Dunbar to two consecutive terms totaling five years in prison, of which Dunbar had served one year prior to his federal sentencing.

In federal court, Dunbar pled guilty to a one-count indictment charging him with bank robbery under 18 U.S.C. § 2113(a) (2006).  At Dunbar's sentencing in April 2009, the district court adopted the sentencing guidelines calculations set forth in Dunbar's presentence report ("PSR"); in pertinent part, the court first calculated Dunbar's total offense level under Chapters Two and Three of the Guidelines to be 23, which among other adjustments included a four-level increase for the serious bodily injuries

-2-

suffered by the teenage crash victim.  U.S.S.G. § 2B3.1(b)(3)(B) (2008).

The court next found that Dunbar was a career offender as defined in U.S.S.G. § 4B1.1, and applied (as directed by the guideline) the higher career-offender offense level of 29 (in lieu of 23), see U.S.S.G. § 4B1.1(b), resulting in a guidelines range of 151 to 188 months' imprisonment.  Dunbar sought credit under U.S.S.G. § 5G1.3(b) for time he had already served on his state convictions, but the court found that section 5G1.3(b) did not apply because Dunbar was a career offender.

After noting the sentencing factors set out in 18 U.S.C. § 3553(a) and emphasizing Dunbar's extensive criminal history and the harm to the crash victim, the court imposed a within-guidelines sentence of 158 months' imprisonment.  The court ordered that term to run concurrently with Dunbar's state sentences but refused to reduce the federal sentence to account for the time Dunbar had already served on his state sentences.  Dunbar has now appealed to contest this refusal.

Under the governing provision, a federal sentence imposed on one subject to an undischarged prior sentence must be consecutive in some cases, U.S.S.G. § 5G1.3(a); in others, it must be concurrent, with credit given for time already served on the prior sentence, U.S.S.G. § 5G1.3(b); and in cases falling in neither category, the matter is confided to the judgment of the

sentencing judge, U.S.S.G. § 5G1.3(c).  Here, the case falls outside the first category; the main question--an issue of law reviewed de novo--is whether it is within the second, which reads as follows:

> If subsection (a) does not apply, and <u>a term of imprisonment resulted from another offense that is relevant conduct to the instant offense of conviction</u> under the provisions of subsections (a)(1), (a)(2), or (a)(3) of § 1B1.3 (Relevant Conduct) <u>and that was the basis for an increase in the offense level for the instant offense under Chapter Two (Offense Conduct) or Chapter Three (Adjustments)</u>, the sentence for the instant offense shall be imposed as follows:
>     (1) the court shall adjust the sentence for any period of imprisonment already served on the undischarged term of imprisonment if the court determines that such period of imprisonment will not be credited to the federal sentence by the Bureau of Prisons; and
>     (2) the sentence for the instant offense shall be imposed to run concurrently to the remainder of the undischarged term of imprisonment.[1]

U.S.S.G. § 5G1.3(b)(emphases added).

Here, of course, the district judge did specify that the federal sentence would run concurrently with the remaining time on the state sentence; but, having concluded that subsection (b) did not apply, he did this as a matter of discretion.  If subsection

---

[1]The requirement in section 5G1.3(b)(1) that the Bureau of Prisons will not itself credit the time served on the prior sentence is met here because the BOP is statutorily forbidden from giving Dunbar credit on the state sentence when the state has already given him credit for that same sentence.  <u>See</u> 18 U.S.C. § 3585(b); <u>United States</u> v. <u>Ross</u>, 219 F.3d 592, 594 (7th Cir. 2000).

-4-

(b) did apply, then whatever federal sentence the court ultimately adopted, the district judge would have had to give Dunbar credit for the one year already served.

The original offense level calculation of 23 took account of some of the conduct that underlay the state sentence. In particular, the conduct underlying the state conviction for driving while intoxicated and causing serious bodily injury prompted the four-level increase for the serious bodily harm; and, as conduct undertaken in seeking to avoid capture for the federal offense, it meets the definition of relevant conduct and satisfies the first underlined condition quoted above. See U.S.S.G. § 1B1.3(a)(1).

However, section 5G1.3(b)(1) is triggered only when, in the words of the second underlined condition, the relevant conduct also "was the basis for an increase in the offense level for the instant offense under Chapter Two (Offense Conduct) or Chapter Three (Adjustments)." Here, in one sense it was, since the initial level-23 calculation reflected an increase; but in another sense it was not, because the level-23 calculation itself was superseded by an obligatory further adjustment under Chapter 4 because Dunbar was found to be a career offender regardless of the state convictions stemming from the robbery.

The commentary and history of section 5G1.3(b), along with the pertinent judicial precedent, confirm that its purpose was to avoid or at least mitigate the risk of double punishment. E.g.,

<u>Witte</u> v. <u>United States</u>, 515 U.S. 389, 404-05 (1995). No such double punishment is threatened where, as here, the relevant conduct did not affect the governing <u>final</u> guideline calculation, which itself furnished the starting point for the federal sentence.

Dunbar suggests that double punishment did occur by positing that, if he had not been given the state sentence and the car crash had been subsumed into a single federal sentence, he would still have received only the 158-month sentence. On the contrary, by deliberately choosing to run the federal sentence concurrent with the last four years of the state sentence, but not credit the year already served in state prison, the district judge effectively indicated just what he thought was the appropriate time for the combined federal and state crimes.

Dunbar says that the level-23 calculation was a "necessary step" in the sentence; but this is so only in a chronological sense. Yes, the district court had to read Chapters Two and Three to see whether the range calculated under those provisions was higher than the minimum applicable to Dunbar as a career offender. But, as the range proved lower, it dropped entirely out of the sentencing calculation and had <u>no causative effect</u> on the federal range or sentence.

In other like situations, we have flatly rejected this "necessary step" argument in concluding, as have other courts, that one sentenced as a career offender is not entitled to apply for

resentencing based on a retroactive adjustment in the drug guidelines.[2] There, as here, the drug-guideline calculations had been made but, as here, were superseded by career-offender calculations and played no role in the defendant's ultimate sentence.

Also in point is our decision in United States v. Carrasco-de-Jesús, 589 F.3d 22 (1st Cir. 2009). There, the defendant argued that section 5G1.3(b) applied to her because a $101.60 check that was the subject of a state conviction had, she contended, factored into a six-level increase of her federal guidelines offense level under a provision calling for such an increase when the loss attributable to the offense exceeds $30,000. Id. at 27.

However, the record indicated the aggregate loss exceeded $50,000, so the $101.60 check made no difference in whether or not the six-level increase applied, even if the check had in fact been counted in the total loss amount. Id. at 28. We noted that "the Sentencing Commission itself appears to regard the 'basis' language as causal" and, "fail[ing] to see how an item of loss that has no effect on the offense level can serve as the 'foundation' of that

---

[2]See United States v. Caraballo, 552 F.3d 6, 9-10 (1st Cir. 2008) (career-offender sentence not "based on" crack cocaine guideline), cert. denied, 129 S. Ct. 1929 (2009); accord United States v. Wesson, 583 F.3d 728, 731 (9th Cir. 2009) (collecting cases across circuits), cert. denied, 130 S. Ct. 2071 (2010).

level," we affirmed the district court's refusal to apply section 5G1.3(b). Id. at 28-29.

Dunbar suggests that other courts have reached the opposite conclusion. But his citations are to cases interpreting the previous and substantively different version of section 5G1.3, e.g., United States v. Lynch, 378 F.3d 445, 446 (5th Cir. 2004); United States v. Rivers, 329 F.3d 119, 121-22 & n.2 (2d Cir. 2003), or simply noting a district court's invocation of section 5G1.3(b) without considering the interpretive issue now before us, e.g., United States v. Rivera, 189 F. App'x 933, 936 (11th Cir. 2006) (unpublished); United States v. Fernandez, 436 F. Supp. 2d 983, 991 (E.D. Wis. 2006).

Affirmed.