# United States Court of Appeals
## For the First Circuit

No. 21-1730

UNITED STATES OF AMERICA,

Appellee,

v.

DAMIAN PERRY, a/k/a Primo,

Defendant, Appellant.

---

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

[Hon. John A. Woodcock, Jr., U.S. District Judge]

---

Before

Thompson, Howard, and Gelpí,
Circuit Judges.

---

James M. Mason, with whom Handelman & Mason LLC was on brief, for appellant.
Mahogane D. Reed, U.S. Department of Justice, Criminal Division, Appellate Section, with whom Darcie N. McElwee, United States Attorney, Joel B. Casey, Assistant United States Attorney, Kenneth A. Polite, Jr., Assistant Attorney General, and Lisa H. Miller, Deputy Assistant Attorney General, were on brief, for appellee.

---

September 16, 2022

---

**THOMPSON**, <u>**Circuit Judge**</u>.  Damian Perry (known to some as "Primo") questions the procedural and substantive reasonableness of a below-guidelines sentence imposed by a federal district judge in Maine.  But we must affirm.

### How Perry Got Here

Perry's story bounces back and forth between Connecticut and Maine.  Noting only what is needed to frame the legal issues before us, we ask for the reader's patience as we provide the key dates and details (their significance will become clear later, rest assured — know too that the core background events are undisputed unless otherwise noted).

Sometime in early 2016, Perry hooked up with Luis Padilla.  It changed Perry's life forever.

Padilla led a gang that dumped drugs (crack and heroin) from Connecticut onto the streets of Maine.  Doing what he could to help the group, Perry (in the government's telling) soon became co-leader with Padilla (Perry contests the co-leader label).  Authorities caught on to their activities, however.  And by 2016's end, a federal grand jury in Connecticut indicted the two and another on various drug charges — including conspiracy from about October 1, 2016 through October 12, 2016.

Perry got released on bail after his arrest, conditioned on his not breaking any laws (federal, state, or local).  And in

March 2017, he pled guilty in Connecticut federal court to the conspiracy charge. But he did not stay out of trouble for long. We know this because while still on bail pending sentencing in Connecticut, he got busted in September 2017 for pumping more drugs into Maine.

Cut to July 2018. A federal grand jury in Maine indicted Perry, Padilla, and others for drug conspiracy (involving crack and heroin) beginning about January 1, 2015 and continuing to about September 1, 2017. Back in Connecticut, however, a federal district judge about a month later — after factoring his "continu[ing] to commit crimes" during the bail period into her decisional calculus, see 18 U.S.C. § 3553(a) (a statute that guides judges during sentencing) — gave Perry 92 months behind bars for his part in the conspiracy charged in the Connecticut case, with 92 months being the lowest point on the guidelines range (granting the government's motion, the Connecticut federal judge also tossed the remaining counts). Padilla got 78 months for his role.

April 2019 turned out to be a good month for Padilla, however. A federal district judge in Maine dismissed the case against him there for double jeopardy, concluding that the government "failed to show it is not prosecuting [him] twice for the same crime." But a little later, in May 2019, a Maine federal grand jury separately indicted Perry for possessing drugs (crack

- 3 -

and heroin) with intent to distribute and for using a communications device to commit a drug crime (a big difference between this indictment and the other indictments is that this one did not include a conspiracy charge). In July that same year, Perry pled guilty to these counts in return for the government's dismissal of the conspiracy charge in the earlier Maine federal indictment.

That brings us to Perry's sentencing on the drug-distribution and communications-device counts. During that time, a lot happened. But all one needs to know for now appears in the next seven paragraphs.

As the calendar turned to November 2019, a probation officer drafted a presentence investigation report ("PIR") using conduct — including drug quantities — from Perry's Connecticut-conspiracy conviction to develop a guidelines range. Perry objected to some parts of the PIR in January 2020, arguing for example that probation's use of that conduct raised double-jeopardy concerns because it was "implicated" in the Connecticut case.[1] Which explains why he asked the Maine federal judge *not* to

---

[1] The Framers "designed" the Constitution's double-jeopardy clause "as much to prevent the criminal from being twice punished for the same offence as from being twice tried for it." Witte v. United States, 515 U.S. 389, 396 (1995) (quoting Ex parte Lange, 85 U.S. (18 Wall.) 163, 173 (1874)). Perry's case (as he himself concedes) raises no "successive prosecution" concerns.

use drug weight from that conviction (he thought, and still thinks, however, that double-jeopardy principles "should be considered when determining the fairness of the sentence and whether the sentence in the Maine case should run concurrent to that of the Connecticut case). Having had some time to think about the matter, that same judge — at a presentence conference in April 2020 — asked probation to tell the parties what Perry's guidelines range would be with his Connecticut-offense conduct removed from the equation.

Released in July 2020, probation's revised PIR laid out the two scenarios.

Scenario one: The Maine federal judge treats Perry's Connecticut offense as "relevant conduct" to the drug-distribution and communications-device violations listed in the Maine federal indictment. See USSG § 1B1.3(a)(1)(B) (defining relevant conduct to include "all acts and omissions" (1) "within the scope of the jointly undertaken criminal activity"; (2) "in furtherance of that criminal activity"; and (3) "reasonably foreseeable in connection with that criminal activity"). So all drug quantities from the Connecticut case get added to the mix, resulting in a base offense level of 32. After some adjustments (not relevant here), the total-offense level becomes 38. The Connecticut offense does not affect his criminal-history category of V, however. Perry's guidelines range is 360 months to life, though statutorily capped

at 528 months. Treating the Connecticut offense as relevant conduct means the Maine federal judge could adjust Perry's sentence to run fully concurrent with his Connecticut-offense sentence. See USSG § 5G1.3(b)(2) (providing that if "a term of imprisonment resulted from another offense that is relevant conduct to the instant offense . . . the sentence for the instant offense shall be imposed to run concurrently to the remainder of the undischarged term of imprisonment"); see also id. § 5G1.3(b)(1) (stating that if the judge concludes that the bureau of prisons will not credit time "already served on the undischarged term of imprisonment," the judge "shall adjust the sentence" to account for that time).

Now for scenario two, which differs dramatically from scenario one: The Maine federal judge does not treat Perry's Connecticut offense as relevant conduct. So all drug quantities from that case are excluded from the sentencing calculation, which results in a base-offense level of 28 and an adjusted total-offense level of 34. This scenario also triggers the addition of 3 criminal-history points, placing Perry in criminal-history category VI with a guidelines range of 262 to 327 months. And not considering the Connecticut offense as relevant conduct means the Maine federal judge could run Perry's sentence concurrent with, partially concurrent with, or consecutive to the undischarged Connecticut-offense sentence. See USSG § 5G1.3(d) (policy

- 6 -

statement) (providing that if a prior offense is not relevant conduct to the instant offense, the judge may impose a sentence concurrent, partially concurrent, or consecutive "to the prior undischarged term of imprisonment").

Returning to his theory of double jeopardy, Perry insisted that the Connecticut federal judge had already punished him for his conduct and so the Maine federal judge had to impose a sentence fully concurrent to his Connecticut sentence.[2] But the Maine federal judge concluded otherwise in December 2020, ruling that enhancing (within statutory limits) the punishment for Perry's latest crime because of earlier criminal conduct would not impose a second punishment for that conduct. "[T]he tail of" the relevant conduct from the Connecticut case, said the judge, is not "wag[ging] the dog of the substantive offense[s]" in Maine.

As Perry's sentencing drew nearer, he and the government jointly stipulated in March 2021 that before his December 2016 arrest "in Connecticut, [he] had been participating in a drug trafficking conspiracy with Luis Padilla and others since 2016" and that "[a]t some point following his release following his arrest in Connecticut" he "resumed his participation in the conspiracy" (some brackets removed). But at sentencing in

---

[2] Apologies for not having a shorter or catchier way to differentiate the two federal district judges.

September 2021, the parties agreed that in crafting the guidelines range the Maine federal judge should exclude all drug quantities charged in the Connecticut case. That judge accepted their agreement, noting that omitting those quantities helps "lower" the guidelines range. The judge then applied a 3-level enhancement because Perry committed new crimes while on bail, see USSG 3C1.3, rejecting his double-jeopardy theory that the Connecticut federal judge had "punished [him] already for this bail violation in his Connecticut case." And the judge added 3 criminal-history points for the Connecticut conviction, putting Perry in criminal-history category VI with a guidelines range of 262 to 327 months.

Beneficially to Perry, however, the Maine federal judge used a range of 210 to 262 months to reduce the sentencing disparity between crack and powder cocaine. And after assessing the § 3553(a) factors, the judge varied downwards (by a lot) to 137 months — with 6 months attributed to Perry's having done the underlying offenses while on bail. Last (though not least), the judge structured Perry's term to run concurrently with the rest of the Connecticut sentence but with no credit for the 48 months already served on that sentence. The judge ruled that way after rebuffing Perry's claim that sentencing delays caused by the COVID-19 pandemic represent the kind of "extraordinary" circumstances that justify time-served credit and after saying that he wanted to

"maintain[] the district judge in Connecticut's punishment of [him] for the Connecticut crime."[3] And the judge made sure to specify that he designed the sentence to "punish[]" Perry "for what [he] did in Maine" and not to "punish [him] again for what [he] did in Connecticut."

So here we are, with Perry (as we said) calling the Maine federal judge's sentence procedurally and substantively unreasonable.[4]

### Standard of Review

We review preserved claims of sentencing error — whether procedural or substantive — for abuse of discretion (no one disputes that this standard controls here). See, e.g., United States v. Vélez-Andino, 12 F.4th 105, 112 (1st Cir. 2021). This review is multi-layered, requiring us to inspect "factual findings for clear error, arguments that the [judge] erred in interpreting or applying the guidelines de novo, and judgment calls for abuse of discretion simpliciter." United States v. Leahy, 668 F.3d 18,

---

[3] Perry preferred to "wait for an in-person sentencing," despite potential delays in in-person proceedings caused by the COVID-19 pandemic.

[4] For anyone wondering, a different lawyer represents Perry on appeal.

21 (1st Cir. 2012); see also United States v. Carpenter, 781 F.3d 599, 621-22 (1st Cir. 2015).

### Procedural Reasonableness

First up is Perry's claim that had the Maine federal judge treated the Connecticut drug activity as relevant conduct, he would have applied § 5G1.3(b) instead of § 5G1.3(d) — which, the argument continues, would have resulted in the judge's adjusting the sentence for "time served" and having it "run concurrently with unserved Connecticut time."[5] It is of course Perry's burden to prove the applicability of a guidelines section that will help his sentence. See, e.g., United States v. Carrasco-de-Jesús, 589 F.3d 22, 28 (1st Cir. 2009). But he has not done that.

Judges "often" have discretion in deciding whether to impose a concurrent or consecutive sentence. See United States v.

---

[5] As a reminder of sorts, § 5G1.3(b) says that if a sentence "resulted from another offense that is relevant conduct to the instant offense of conviction" under § 1B1.3, the judge "shall adjust the sentence" for any prison time "already served" that the bureau of prisons will not credit and "shall" run the sentence concurrent with "the remainder of the undischarged term." But § 5G1.3(d) says that "[i]n any other case involving an undischarged term of imprisonment," the judge may impose a sentence to run concurrently, partially concurrently, or consecutive to the undischarged term "to achieve a reasonable punishment for the instant offense."

Rentas-Muñiz, 887 F.3d 1, 3 (1st Cir. 2018).[6]  Relying on United States v. Román-Díaz, Perry helpfully concedes (at least implicitly) that the Maine federal judge had that discretion here, *after* considering the § 3553(a) factors — "including any applicable sentencing guidelines and policy statements," like § 5G1.3, see 853 F.3d 591, 598 (1st Cir. 2017) (quoting Carrasco-de-Jesús, 589 F.3d at 27).  Yet despite what Perry argues, the judge — who agreed with the parties not to consider the Connecticut drug activity in calculating the base-offense level, listened to the pitch for a fully concurrent sentence under § 5G1.3, but picked a partially concurrent one — followed our caselaw to a T.  A judge after all must settle on *one* understanding of "relevant conduct" in calculating a sentence.  See United States v. Jaca-Nazario, 521 F.3d 50, 54 (1st Cir. 2008).  And once the judge here said yes to excluding the Connecticut drug activity in figuring the base-offense level, he committed no error in using that consistent understanding of "relevant conduct" in working with § 5G1.3.  See id. (emphasizing that a judge cannot use certain conduct as relevant conduct "for some purposes but not for others").

---

[6] We say "often" because a statute of conviction — like 18 U.S.C. § 924(c), the general firearms statute — might require a consecutive sentence.  See Rentas-Muñiz, 887 F.3d at 3.

- 11 -

Perry argues in his reply brief that the judge stumbled by "ignor[ing]" the parties' March 2021 stipulation that before his December 2016 capture "in Connecticut, [he] had been participating in a drug trafficking conspiracy with Luis Padilla and others since 2016" and that after "his release following his arrest in Connecticut" he "resumed his participation in the conspiracy." As he sees things, this stipulation shows that "the Connecticut case was relevant conduct." Putting aside both that his theory fails to account for the parties' later agreement (which the judge accepted) to bar all drug amounts from the Connecticut case and that he himself admits that judges (not the litigants) decide what is relevant conduct, we fall back on the well-known rule that "new arguments in reply briefs are waived." See BioChemics, Inc. v. AXIS Reinsurance Co., 924 F.3d 633, 644 n.8 (1st Cir. 2019).

The bottom line is that Perry offers no winning procedural-reasonableness argument.

### Substantive Reasonableness

Even absent any procedural defects, Perry claims his below-guidelines sentence is substantively unreasonable. "[R]arely" will a sentence like that require a do-over. See United States v. Millán-Machuca, 991 F.3d 7, 32 (1st Cir. 2021). And Perry's situation is not that "rare" case. As we explain why,

- 12 -

keep in mind "that there is no single 'reasonable' sentence in any one case but rather a range of sensible outcomes," see United States v. Vixamar, 679 F.3d 22, 29, (1st Cir. 2012) (quoting United States v. Clogston, 662 F.3d 588, 592 (1st Cir. 2011)) — meaning that if the Maine federal judge "gave a plausible explanation" for the chosen sentence and "reached a defensible result," Perry's substantive-unreasonable challenge crashes, see United States v. Chisholm, 940 F.3d 119, 132 (1st Cir. 2019).

Citing application note 4(E) to § 5G1.3, Perry argues that — in exercising discretion under § 5G1.3(d) — the Maine federal judge slipped by not crediting him for time he served while awaiting his in-person sentencing hearing during the COVID-19 pandemic.[7] This application note says that "in an extraordinary case involving an undischarged term of imprisonment under" § 5G1.3(d), "it may be appropriate for the court to downwardly depart." Such a departure, for example, "may be warranted to ensure that the combined punishment is not increased unduly by the fortuity and timing of separate prosecutions and sentencings." The judge very much wanted to help "maintain[] the district judge in Connecticut's punishment of [him] for the Connecticut crime."

---

[7] Perry (without contradiction from the government) puts that number at "22 months," noting that "his sentencing took place nearly 22 months" after probation wrote the "initial [PIR]."

- 13 -

And Perry has not convincingly shown that the judge's actions rise to the level of reversible error, particularly given that application note 4(E) tells sentencers to structure sentences to "ensure[] a reasonable incremental punishment for the instant offense of conviction." Ever-persistent, Perry suggests that the judge "was silent on the effect of the nearly two year delay" COVID-19 caused "just to get sentenced." But the defense spent time at sentencing pushing COVID-19-based arguments. And any hole in the judge's reasoning can be closed by comparing what was argued with what the judge did. See, e.g., United States v. Baptiste, 8 F.4th 30, 37 (1st Cir. 2021).[8]

Perry next protests that the Maine federal judge put him in double jeopardy. And his brief hints at a kitchen-sink approach, intimating for instance that the Maine federal judge botched matters by considering the Connecticut-conspiracy conduct and the crimes he committed while on bail — even though the Connecticut federal judge also considered all this in sentencing him.[9] A common theme runs through his argument, however. Leaning

_____

[8] A point of clarification. While Perry treats this issue as a substantive reasonableness challenge, the government treats it as a procedural reasonableness attack. The challenge is insubstantial regardless of the label. See generally United States v. Denson, 689 F.3d 21, 26 (1st Cir. 2012) (noting that "[r]easonableness has two aspects — procedural and substantive").

[9] Perry's brief also whispers a suggestion of a double-jeopardy problem based on his belief that the government's

- 14 -

heavily on United States v. Lombard, 72 F.3d 170 (1st Cir. 1995), and using a familiar metaphor, Perry basically argues that the "tail" of the conduct considered in Connecticut "wagg[e]d the dog" of his substantive offenses in Maine. But his efforts to draw a parallel between his situation and Lombard's go nowhere, though this requires some explaining.

A state-court jury acquitted Lombard of state-law murder charges. Id. at 173. But federal prosecutors later charged him with federal-firearms offenses. Id. A federal-court jury convicted him. Id. at 174. And the district judge gave him a life term under the then-mandatory guidelines after increasing the sentence based on a finding that he had used the firearm in the murders, id. — without that enhancement, his guidelines range would have been 262 to 327 months, id. at 178. We vacated and remanded for resentencing, stating (among other things) that not only did the enhancing conduct constitute separate crimes, but Lombard had already been acquitted of them. Id. at 178-79. So the feds essentially used the federal-firearms conviction to achieve what the state-murder charges had not. See id. We continued:

> Given the magnitude of the sentence "enhancement," the seriousness of the "enhancing" conduct in relation to

sentencing recommendation in this case "remained rooted in" the "dismissed conspiracy charge." But this suggestion is too underdeveloped to be preserved. See, e.g., United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990).

- 15 -

the offense of conviction, and the seemingly mandatory imposition of the life sentence, this summary process effectively overshadowed the firearms possession charge and raises serious questions as to the proper allocation of the procedural protections attendant to trial versus sentencing. We would be hard put to think of a better example of a case in which a sentence "enhancement" might be described as a "*tail which wags the dog*" of the defendant's offense of conviction.

Id. at 180 (emphasis added and cleaned up). Ultimately, because one could "realistically" regard Lombard's life term "as punishment *for* the murders, as opposed to punishment for the firearms offense," constitutional worries "c[a]me" to the fore." But we took pains to note the "unusual[ness]" of this "perhaps . . . singular case," stressing how Lombard did not provide an open-ended invitation to litigate such issues in usual cases. See id. at 187; see also United States v. González, 857 F.3d 46, 60 (1st Cir. 2017) (indicating that Lombard stands alone in this circuit in its result).

Suffice to say, Perry's case bears no meaningful comparison to Lombard. And we can so conclude by noting that the Maine federal judge did not use the drug quantities from the Connecticut case to boost up Perry's offense level. Don't forget either that the Maine federal judge explicitly said that he crafted the below-guidelines sentence to "punish[]" him "for what [he] did in Maine," not to "punish [him] again for what [he] did in Connecticut." Faced with these realities, Perry offers no

- 16 -

compelling way to "realistically" see his sentence as "punishment" for the Connecticut conviction, rather than as "punishment" for the Maine conviction, see Lombard, 72 F.3d at 181 — he offers no sensible basis for concluding that his case fits Lombard's "unusual and perhaps . . . singular" mold. See id. at 187. If more were needed (and we doubt that it is), Perry identifies nothing about his sentencing that implicates Lombard's core concern — prior "relevant conduct" that was "inordinately significant" in dictating his sentence. See id. at 185. And other than listing Lombard's other concerns — "the absence of a statutory maximum for the felon in possession offense" (to quote his brief, as a for-instance) — he never meaningfully explains how those concerns are present here.

Trying another tack, Perry faults the Maine federal judge for not seeing a double-jeopardy problem in applying the 3-level enhancement under § 3C1.3 for his having committed the underlying offense while on bail in the Connecticut case. As framed, this contention rises or falls on his claim that the Connecticut federal judge "had already . . . applied" that enhancement "in the Connecticut case," resulting in what he calls "impermissible double counting." The contention falls, for the Connecticut federal judge did *not* apply that enhancement in estimating the guidelines range. She did mention how Perry had

committed multiple federal offenses (including the offense in this case) while on bail, though she did so only in selecting a suitable sentence under the § 3553(a) factors.  And her considering Perry's conduct like this while imposing a sentence did not constitute punishment for double-jeopardy purposes and did not bar the Maine federal judge from applying § 3C1.3.  See Witte, 515 U.S. at 397-99.[10]

Speaking of the § 3553(a) factors, Perry next accuses the Maine federal judge of not properly assessing all the relevant ones in selecting his sentence.  But the record shows otherwise, with the judge's extensive discussion of those factors spanning nearly *18* pages.  By way of example only, the judge discussed the seriousness of the crimes, deterrence, and public protection — commenting how Perry's "go[ing] out and continu[ing] to deal drugs" while on bail was "highly unusual and rather brazen," "self-destructive," and gave "the court pause" and "a chill."

---

[10] Sentencing Witte on a marijuana charge, a federal judge enhanced his prison term after considering uncharged conduct involving cocaine.  Id. at 394.  When Witte later got charged with importing cocaine (the same cocaine considered in the earlier proceeding), he moved to dismiss the indictment on double-jeopardy grounds.  Id. at 394-95.  He won in the district court, lost in the circuit court, and lost again in the Supreme Court.  Of note, the Supreme Court held that consideration of the cocaine conduct in this context was not "punishment" under the double-jeopardy clause.  Id. at 397-99.

- 18 -

Quoting § 3553(a)(6), Perry also accuses the Maine federal judge of not "avoid[ing] unwarranted sentencing disparities" between him and Padilla. "Padilla was sentenced to a single 78-month sentence" while he (Perry) "faces an overall sentence of 185 months between the two cases," which is unfair to him — or so Perry writes.[11] The problem, as the judge noted, is "Padilla stopped dealing drugs in Maine" but Perry "did not." And because different levels of culpability can justify different sentences, Perry's disparity claim is a no-go.[12] See, e.g., United States v. Candelario-Ramos, 45 F.4th 521, 525-26 (1st Cir. 2022); United States v. Romero, 906 F.3d 196, 211-12 (1st Cir. 2018); United States v. Reverol-Rivera, 778 F.3d 363, 366 (1st Cir. 2015).

A sub-subheading in Perry's opening brief says (emphasis ours) that his term created "[s]entencing disparities with *other* related defendant*s*." But he waived the "other related defendants" claim by not developing it. His brief talks about the "different treatment of . . . two men" — Perry and Padilla — and not others. See, e.g., United States v. Pérez-Vásquez, 6 F.4th 180, 204 n.18

---

[11] Perry asserts (again without contradiction from the government) that his "sentence in Connecticut ran for approximately 48 months before his concurrent 137 months were ordered for a total of 185 months."

[12] The judge recognized that "Padilla stopped because he was in prison and he could not come to Maine." But the judge said that the "fact is . . . Padilla did stop." And Perry's briefs offer no unbeatable response.

(1st Cir. 2021).  And waiver principles also doom his reply brief's single-sentence statement that an unjustified disparity exists between him and "co-defendants in the case whose sentence ranged from 10-48 months."  See United States v. Munyenyezi, 781 F.3d 532, 545 (1st Cir. 2015) (deeming a sentencing-disparity argument waived because the defendant made no attempt to show how she was similarly situated to her proposed comparators).  See generally Braintree Lab'ys, Inc. v. Citigroup Glob. Mkts Inc., 622 F.3d 36, 43-44 (1st Cir. 2010) (deeming arguments cursorily made in an opening brief waived, adding that "[t]he slight development in the reply brief d[id] nothing to help matters, as arguments raised there for the first time come too late to be preserved on appeal").

All in all, nothing Perry argues persuades us that his below-guidelines sentence is implausible or indefensible.  And that is that on the substantive-reasonableness front.

## Final Words

Convinced the Maine federal judge abused no discretion here, we *affirm* Perry's sentence.