# United States Court of Appeals
## For the First Circuit

No. 15-1307

UNITED STATES OF AMERICA,

Appellee,

v.

FERNANDO DÍAZ-RODRÍGUEZ,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Francisco A. Besosa, U.S. District Judge]

Before

Torruella, Thompson, Kayatta,
Circuit Judges.

Joshua L. Solomon and Pollack, Solomon, Duffy LLP on brief for appellant.

Tiffany V. Monrose, Assistant United States Attorney, Rosa Emilia Rodríguez-Vélez, United States Attorney, and Nelson Pérez-Sosa, Assistant United States Attorney, Chief, Appellate Division, on brief for appellee.

March 17, 2017

**THOMPSON**, **Circuit Judge**.  Appellant Fernando Díaz-Rodríguez ("Díaz") pled guilty to aiding and abetting others in the possession of a firearm that was discharged during a robbery in violation of 18 U.S.C. §§ 924(c)(1)(A)(iii) and 2.  On appeal, Díaz argues that his sentence should be vacated for lack of a factual basis to support his guilty plea.  After careful review, we affirm the district court's sentence.

### Background[1]

The facts of this case are largely undisputed.  On September 1, 2010, two employees of the Ranger American Armored Services were driving an armored truck on their normal delivery route.  When they arrived at the Morovena Credit Union in Morovis, Puerto Rico to deliver $80,000 to the bank, they were attacked by several armed robbers who pulled up behind them in a dark-grey Toyota.  Díaz was one of the robbers.  During the course of the heist, one robber struck the employee who had exited the armored truck with the cash in the back of the head, while another robber pointed a .357 Magnum at that employee.  The employee ultimately threw the bag of money to the ground and one robber picked it up.  Díaz then grabbed the employee in a bear-hug from behind and the employee noticed that he, too, was carrying a gun.  The robber

---

[1] Because this sentencing appeal follows a guilty plea, we gather the pertinent facts from the change-of-plea colloquy and plea agreement.  United States v. Ríos-Hernández, 645 F.3d 456, 458 (1st Cir. 2011).

wielding the .357 Magnum then fired shots in the direction of both the employee and Díaz. Díaz was struck in the left arm and left leg, the employee was shot in the abdomen, and they both collapsed to the ground. Another rifle-toting robber fired at the second Ranger American employee who had remained inside the armored truck, but he managed to drive away and escape the scene. Then the robbers attempted to shoot the remaining wounded employee in the head. Fortunately, the robbers were out of ammunition and the employee was able to escape. The robbers, including Díaz, then re-entered the dark-grey Toyota and drove off, but were later apprehended by authorities.

On March 3, 2011 the government filed a superseding two-count indictment charging Díaz with aiding and abetting others in the robbery of a bank armored truck in violation of 18 U.S.C. §§ 1951 and 2 (Count One) and with carrying and using a firearm that was discharged during and in relation to the robbery in violation of 18 U.S.C. §§ 924(c)(1)(A) and 2 (Count Two). Count Two did not actually use the words "aiding and abetting" as Count One did; however, it did cite to the aiding and abetting statute at 18 U.S.C. § 2 (which specifically provides that "[w]hoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal").

On October 3, 2014, the parties entered into a plea agreement (the "Agreement"). By the precise terms of the Agreement, Díaz agreed to plead guilty to Count One, which "charge[d] that [Díaz], aiding and abetting others, did obstruct, delay, and affect commerce, and the movement of articles and commodities in such commerce, by robbery in violation of 18 U.S.C. §§ 1951 and 2." Díaz also agreed to plead guilty to Count Two, which "charge[d] that [Díaz], aiding and abetting others, did knowingly carry and use a firearm, which firearm was discharged, during and in relation to [the robbery charged in Count One]." The parties also agreed to the statutory penalties applicable to both counts. In relevant part, the parties agreed that Count One had a statutory maximum imprisonment term of no more than twenty years (or 240 months) pursuant to 18 U.S.C. § 1951. The parties also agreed that Count Two had a mandatory minimum term of not less than ten years (or 120 months) and a potential maximum of life imprisonment pursuant to 18 U.S.C. § 924(c)(1)(A)(iii).

For the purposes of calculating Díaz's sentence under the United States Sentencing Guidelines Manual ("Guidelines"), the parties further agreed to a total offense level of 28 for Count One, made no determination as to the applicable criminal history category, and agreed that Count Two was subject to a 120-month (or ten year) mandatory minimum to run consecutively to Count One. The Agreement also contained a waiver-of-appeal clause which

- 4 -

provided that Díaz knowingly and voluntarily waived the right to appeal the judgment and sentence in his case, provided that he was sentenced in accordance with the terms and conditions set forth in the sentencing recommendation provisions of the Agreement.

On October 3, 2014, Díaz pled guilty to both counts of the indictment and on February 18, 2015, finding an applicable criminal history category of III and a total offense level of 28, the court sentenced Díaz in accordance with the terms of the plea agreement to 120 months as to Count One and another 120 months as to Count Two, to be served consecutively. Díaz did not challenge the court's sentencing nor did he attempt to withdraw his guilty plea.

Díaz now appeals his sentence, arguing that the court incorrectly sentenced him to 120 months as to Count Two (Díaz does not challenge the court's sentence as to Count One). Díaz argues that although he signed a plea agreement with a waiver-of-appeal clause and was sentenced in accordance with that agreement, his sentence on Count Two should be reversed because the court did not properly calculate the applicable Guidelines range. Specifically, Díaz argues that there was an insufficient factual basis for the court's acceptance of his guilty plea as to Count Two.

## Discussion

Before turning to the merits of this appeal, we pause to note that the Agreement contained a waiver-of-appeal provision

that foreclosed any appeal so long as Díaz was sentenced in accordance with the agreement's terms. Accordingly, the government argues that because Díaz was sentenced in accordance with the terms of his plea agreement, he has waived his right to appeal. Díaz contends that his arguments on appeal are not within the scope of the waiver-of-appeal clause because the district court improperly calculated the applicable Guidelines range. We need not tarry with the parties' waiver arguments. Because Díaz's claims can be easily resolved on the merits, we assume arguendo that the waiver-of-appeal provision does not bar maintenance of his appeal. See United States v. Sánchez-Maldonado, 737 F.3d 826, 827-28 (1st Cir. 2016).

Here, Díaz's primary contention is that the district court erred in accepting his guilty plea (with regards to Count Two) because there was no factual basis for the intent element of the aiding and abetting charge to which he pled guilty. Because Díaz did not present the issue of an insufficient factual basis to the district court, he now "faces the 'heavy burden' of plain-error review and must" demonstrate that a clear error occurred, which "affected [his] substantial rights [and] seriously impaired the fairness, integrity, or public reputation of judicial proceedings." United States v. Delgado-López, 837 F.3d 131, 134 (1st Cir. 2016) (alterations in original) (quoting United States

v. Ramos-Mejía, 721 F.3d 12, 14 (1st Cir. 2013)).  Díaz can make no such showing.

Our inquiry is guided by both Rule 11 of the Federal Rules of Criminal Procedure and the aiding and abetting statute, 18 U.S.C. § 2.  Federal Rule of Criminal Procedure 11(b)(3) requires that a court determine the factual basis for a guilty plea prior to entering judgment on that plea.  Under Rule 11, the necessary showing for the "factual basis" requirement is "fairly modest" and "the evidence need not conclusively demonstrate guilt beyond a reasonable doubt."  Ramos-Mejía, 721 F.3d at 16 (citing United States v. Pimentel, 539 F.3d 26, 29 (1st Cir. 2008)).  Indeed, "the government need only show a rational basis in fact for the defendant's guilt."  Id. (citing Pimentel, 539 F.3d at 29; United States v. Delgado-Hernández, 420 F.3d 16, 27 (1st Cir. 2005)).  "[T]he government is [also] not required to support every element of the charged crime by direct evidence" and a district court "may infer '[t]he factual predicate for the requisite mens rea . . . from all the evidence alluded to at the Rule 11 hearing." Id.

"[A] person is liable under [18 U.S.C.] § 2 for aiding and abetting a crime if (and only if) he (1) takes an affirmative act in furtherance of that offense, (2) with the intent of facilitating the offense's commission."  Rosemond v. United States, 134 S. Ct. 1240, 1245 (2014).  In Rosemond, the Supreme

Court held that in order to meet the intent requirement when accusing a defendant of aiding or abetting a § 924(c) offense, the government must show "that the defendant actively participated in the underlying drug trafficking or violent crime with advance knowledge that a confederate would use or carry a gun during the crime's commission." Id. at 1243. The Supreme Court defined "advance knowledge" as "knowledge at a time the accomplice can do something with it -- most notably, opt to walk away." Id. at 1249-50.

Relying on Rosemond, Díaz argues that there was an insufficient showing that he had advance knowledge that his fellow robbers would carry or discharge firearms during the robbery and therefore there was an insufficient factual basis to support the intent requirement of the aiding and abetting offense. The government argues that there was a sufficient factual basis to satisfy the intent element of the aiding and abetting statute.

During Díaz's change-of-plea colloquy, the court detailed the charges to which Díaz was pleading guilty. With regard to the relevant aiding and abetting count (Count Two) the following exchange took place:

> **THE COURT**: And Count Two charges that you knowingly carried and used a firearm and that the firearm was discharged during and in relation to a crime of violence for which you may be prosecuted in the Court of the United States, which was the interference with commerce and robbery that is set forth in

Count One, and aiding and abetting others to do that.

As to Count Two, Mr. Díaz, is that what did you [sic]?

**[DÍAZ]:**  Yes, sir.

**THE COURT:**  Is that what you are pleading guilty to?

**[DÍAZ]:**  Yes, sir.

**THE COURT:**  The maximum and minimum punishment that the law provides for the offenses to which you want to plead guilty are as follows . . . .

So, Mr. Díaz, for Count Two, the term of imprisonment, as I told you is not less than 10 years, 120 months, and can go up to life imprisonment. . . .

Do you understand all those serious possible consequences of your plea of guilty?

**[DÍAZ]:**  Yes, sir.

The government then described the facts and evidence it would have presented at trial to prove its case: namely that Díaz was an accomplice involved in the armored truck robbery; that several robbers, including Díaz himself possessed weapons during the course of the robbery; that at least two weapons, including a .357 Magnum and a rifle, were discharged and in fact injured a victim during the robbery; and that Díaz partook in and facilitated the robbery until the very end when the robbers fled the scene.

The district court then asked Díaz whether he "agree[d] with the Government's version [of the facts]."  He responded that

- 9 -

he agreed and admitted to committing the crime as described by the prosecutor.

In light of his factual concessions, we find that there was a sufficient basis to support the requisite intent for aiding and abetting possession of a firearm that was discharged during the course of the robbery. "[A]s long as the government's proffered facts, conceded by the defendant to be true, touch all the bases, there is a sufficient factual basis for the tendered plea." United States v. Jiminez, 498 F.3d 82, 87 (1st Cir. 2007). And "[t]he facts relevant to [the Rule 11 'factual basis'] inquiry may be gleaned either from the defendant's admissions or from the prosecution's version of the evidence (to the extent that it is acknowledged by the defendant)." Id. at 86.

Here, Díaz agreed with the statement of facts presented by the government both at his change-of-plea hearing and within his signed plea agreement. He admitted that he was in a vehicle with confederates -- all of whom possessed weapons, including a .357 Magnum and a rifle -- and that they robbed an armored truck. He admitted that he himself possessed a weapon that was brandished during the robbery and that his armed confederates discharged their weapons from the moment they exited their vehicle until they ran out of ammunition or drove away from the crime scene. Díaz also conceded that he held one of the victims of the robbery in a bear-hug while a fellow robber "opened fire" on the victim and Díaz.

- 10 -

After the victim was hit, and even after Díaz himself had been wounded, Díaz conceded that he remained in confederation with his fellow robbers, one of whom used his rifle to shoot at a second victim. After both victims eventually escaped, Díaz entered the same vehicle he arrived in with his fellow confederates and fled the crime scene. These concessions form a rational basis for accepting Díaz's guilty plea and make Díaz's arguments that he did not know that his confederates possessed and planned to use their weapons highly unlikely. See United States v. Laracuent, 778 F.3d 347, 351 (1st Cir. 2015) (suggesting that where a defendant "agreed that he himself knowingly and unlawfully possessed" firearms used in furtherance of a drug-trafficking offense, his arguments that he lacked advance knowledge that one of his confederates would carry a gun were "particularly flimsy.").

At the very least, even if Díaz was unaware that his confederates possessed and intended to discharge their weapons prior to arriving at the crime scene, either after his armed confederates began shooting at the victims upon exit from their vehicle or certainly after a fellow robber used his weapon to shoot at a victim who Díaz restrained in a bear-hug or, again, after another robber used his rifle to shoot at a second victim, Díaz was afforded ample opportunities upon which he possessed the knowledge necessary to "enable[] him to make the relevant legal (and indeed, moral) choice." Rosemond, 134 S. Ct. at 1249-50.

- 11 -

Indeed, he possessed the relevant "knowledge at a time [he could] do something with it -- most notably, opt to walk away."  Id. at 1250.  Yet, despite obtaining the requisite knowledge regarding his confederates' possession and use of weapons in sufficient time to withdraw from the crime -- in multiple instances, Díaz simply chose otherwise.

Based on Díaz's own concessions, the district court properly concluded that the government had proffered sufficient facts to form a rational basis from which to infer that Díaz possessed the requisite intent for his guilty plea.  See Ramos-Mejía, 721 F.3d at 16.

Before concluding, we tie up some loose ends raised by Díaz himself.  Despite being represented by competent counsel, Díaz requested and was granted permission to file a supplemental pro se brief.  In that brief, Díaz argues that: (1) he was not placed on "sufficient notice" that he was pleading guilty to an aiding and abetting charge; (2) the indictment was "fatally defective" because it did not include the "aiding and abetting" statutory language in Count Two; (3) the district court failed to take into account his age at sentencing; and (4) the district court erred in failing to grant him a downward departure due to his physical injuries.  Like those of his counsel, Díaz's pro se arguments are equally unavailing.

First, the unambiguous terms of the plea agreement itself make clear that Díaz agreed to plead guilty to "aiding and abetting others" who carried and used a discharged weapon during the course of the robbery (Count Two). "In the plea-bargain context, the text of the plea agreement and the content of the change-of-plea colloquy are critically important to a determination of knowledge and volition." United States v. Teeter, 257 F.3d 14, 24 (1st Cir. 2001). Here, despite Díaz's contentions, both the text of the plea agreement and the record of the change-of-plea colloquy demonstrate that he knowingly and voluntarily pled guilty to aiding and abetting others in the use of a discharged firearm during and in relation to the robbery (Count Two).

And while the facts as described by the government, and affirmed by Díaz, contained no mention of his gun being discharged, there can be no confusion that Díaz clearly pled guilty to aiding and abetting others whose firearms were discharged, as the district court clearly indicated such during the change-of-plea colloquy.

Next, Díaz's contention that the indictment was fatally defective because it did not include the "aiding and abetting" statutory language also fails. The indictment did explicitly cite the aiding and abetting statute, 18 U.S.C. § 2. Absent any "unfair surprise," that was more than enough. See United States v. Sanchez, 917 F.2d 607, 611 (1st Cir. 1990) ("Aiding and abetting

- 13 -

is 'an alternative charge in every . . . count, whether explicit or implicit.'" (quoting <u>United States</u> v. <u>McKnight</u>, 799 F.2d 443, 445 (8th Cir. 1986))). Accordingly, the indictment here was more than sufficient when it clearly indicated that Díaz was being charged pursuant to the aiding and abetting statute, 18 U.S.C. § 2.

Díaz also argues that the district court ignored 18 U.S.C. § 3553(a) factors because it failed to consider his age at sentencing. To the contrary, the record demonstrates that the court fully considered Díaz's age, noting that he was "over 54 years old," had a "seventh grade education," and that he was a "father of three children and a grandfather of four." "That [Díaz] would prefer an alternative weighing of the circumstances [and specifically his age] does not undermine the district court's sentencing decision." <u>See</u> <u>United States</u> v. <u>Rossignol</u>, 780 F.3d 475, 479 (1st Cir. 2015).

Lastly, Díaz argues that the district court should have granted him a downward departure because of his physical impairments under § 5H1.4 of the Guidelines, which provides that "[a]n extraordinary physical impairment may be a reason to depart downward." We review the district court's decision not to depart from the Guidelines for reasonableness. <u>See</u> <u>United States</u> v. <u>Anonymous Defendant</u>, 629 F.3d 68, 74 (1st Cir. 2010) ("This review [for reasonableness] encompasses virtually the entire gamut of

sentences imposed under the advisory guidelines, including sentences shaped by discretionary departure decisions."). And a "[r]eview for reasonableness is functionally equivalent to [a] review for abuse of discretion." Id. (citing United States v. Carrasco-De-Jesús, 589 F.3d 22, 26 (1st Cir. 2009)).

We have clarified that "departures based on physical condition are discouraged" and have further noted that a departure may be appropriate when a court finds an "extraordinary impairment," i.e., where "imprisonment would threaten or shorten a defendant's life or when the Bureau of Prisons would be unable to adequately meet the defendant's medical needs." United States v. Martin, 363 F.3d 25, 49 (1st Cir. 2004). In this case, the district court found no such extraordinary circumstances.

The court heard arguments from both Díaz and the government regarding his physical impairments and even noted its consideration of Díaz's physical ailments and whether he could receive adequate treatment in custody, remarking that "[t]he issue to [the court] is whether [Díaz] can be treated either at a prison hospital or at a Care Level 2 facility." Ultimately, the court determined that Díaz could receive adequate treatment while in custody, recognizing that "Mr. Díaz requires medical treatment for the leg wound he received during the robbery" and that "[t]he Court [would] recommend that he be allowed to benefit from medical care offered by the Bureau of Prisons." After careful review of the

record, we agree with the district court's decision not to depart. There is nothing in the record which indicates that Diaz's life would be threatened or shortened by virtue of being incarcerated or that the Bureau of Prisons would be unable to adequately accommodate his medical needs.  The district court's decision was thus reasonable given the facts of this case.

## Conclusion

For the foregoing reasons, we find no error in the district court's acceptance of Díaz's guilty plea with regards to the aiding and abetting count (Count Two).

**Affirmed.**