Not for Publication in West's Federal Reporter

# United States Court of Appeals
## For the First Circuit

No. 15-2475

UNITED STATES OF AMERICA,

Appellee,

v.

JOANN C. RITTALL,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE
[Hon. John A. Woodcock, Jr., U.S. District Judge]

Before
Lynch, Circuit Judge,
Souter, Associate Justice,*
and Baldock, Circuit Judge.**

Kerry A. Haberlin, with whom Rankin & Sultan was on brief, for appellant.

Margaret McGaughey, Assistant United States Attorney, with whom Thomas E. Delahanty II, United States Attorney, was on brief, for appellee.

April 7, 2017

---

* The Hon. David H. Souter, Associate Justice (Ret.) of the Supreme Court of the United States, sitting by designation.

** Of the Tenth Circuit, sitting by designation.

**BALDOCK, Circuit Judge**. Defendant Joann Rittall pleaded guilty to two counts of filing false income tax returns and using other people's identities. Based on her history and characteristics, the nature and circumstances of the offense, and the need to obtain restitution for the victims, the district court would have imposed a sentence at the high-end of the U.S. Sentencing Guidelines range. But because of Rittall's serious medical issues, primarily her Anorexia Nervosa, the district court instead imposed a sentence at the low-end of the Guidelines, resulting in 63 months' imprisonment on both counts to be served concurrently. In this sentencing appeal, Rittall complains that the sentence is both procedurally and substantively unreasonable. After careful consideration, we affirm the district court's sentence on Count 2 but remand with instructions to resentence on Count 1 consistent with the statutory maximum of 60 months' imprisonment.

## I.

Beginning in 2005, Rittall acquired other people's personal identifiers, including their birth dates and social security numbers, by offering to help them file tax returns and claims for rent rebates under Maine's Residents Property Tax and Refund "Circuit Breaker" program. Between 2006 and 2012, Rittall prepared and filed false federal and state income tax returns in her own name and the names of at least 24 others, including her

son, boyfriend, neighbors, and individuals she met through Alcoholics Anonymous and drug treatment programs she attended. The returns included false claims about income, dependents, and the Earned Income Tax Credit. The claimed refunds totaled $435,298, and the federal government and Maine paid out a combined total of $238,961.85 from 2007 to 2010. The IRS paid refunds into bank accounts Rittall designated and could access.

In August 2013, the government filed a two-count Information against Rittall. Count 1 charged False Claims Against the Government, in violation of 18 U.S.C. § 287, for filing false federal income tax returns claiming refunds of more than $200,000 from 2009 to 2012, subject to a statutory maximum of five years' imprisonment. Count 2 charged Identity Theft, in violation of 18 U.S.C. § 1028(a)(7) and 1028(b)(1)(D), for using the personal identifiers of 24 people without their permission and obtaining a thing of value over $1,000, subject to a statutory maximum of 15 years' imprisonment. Rittall waived indictment and pleaded guilty to the Information.

Rittall's serious health problems caused delays in sentencing. Rittall had developed Anorexia Nervosa when she was 14 years old and faced multiple serious medical conditions likely stemming from her eating disorder, including tachycardia (rapid heart rate), hyperthyroidism (overactive thyroid), and hypokalemia (low potassium). She also has Von Hippel-Lindau

disease, a genetic condition causing benign and malignant tumors to develop throughout her body. The district court held seven presentence conferences and delayed sentencing for over two years after Rittall pleaded guilty, in an attempt to allow her to seek medical help and stabilize her condition. But those efforts were met with limited success and continued setbacks. A feeding tube required attention after it migrated from her stomach to her upper bowel; a wound associated with her intravenous feed became infected and she suffered renal failure; she had a mass in her throat that required additional testing; and doctors continued to treat her rapid heart rate, abdominal pain, and chronic kidney disease. At the seventh presentence conference, the district court noted that two of Rittall's doctors suggested Rittall might be sabotaging her own health to avoid incarceration, perhaps out of fear that the Bureau of Prisons ("BOP") could not adequately treat her host of medical conditions.

At sentencing in November 2015, the district court adopted, without objection, the Guidelines calculation recommended in the Third Revised Presentence Investigation Report. Based on an adjusted offense level of 20 and a criminal history category V, Rittall's Guidelines imprisonment range was 63 to 78 months. The district court then heard testimony from the clinical director at Federal Medical Center (FMC) Carswell in Fort Worth,

Texas, who testified to the facility's ability to treat Rittall's numerous medical conditions through inpatient and outpatient care, including medical and mental health services. The district court then heard arguments from the government and Rittall's attorney, as well as comments from Rittall, before stating the sentence.

Focusing on the factors in 18 U.S.C. § 3553(a), the district court explained that it determined Rittall's sentence based mainly on (1) the history and characteristics of the defendant, (2) the nature and circumstances of the offense, (3) the need to obtain restitution to the victims, and (4) the need to provide the defendant with adequate medical care. As to Rittall's history and characteristics, the district court outlined her abusive relationships, substance abuse problems, mental health history, employment history, and criminal history. It noted that her past crimes "reflect a very strong streak of dishonesty." Despite having spent a fair amount of time in jail, she had not been deterred from committing additional crimes. Next, as to the nature and circumstances of the offense, the district court described Rittall's scheme and how she obtained the personal identifying information from people she knew or met through Alcoholics Anonymous, falsified information, obtained the money, and blamed the victims when confronted with her scheme. The district court emphasized that

the scope of the fraud was wide and substantial, involving over 25 victims and receipts of nearly a quarter of a million dollars from 2007 to 2010. Thus, the district court next turned to the need to obtain restitution for the victims, which included the federal and state governments as well as the taxpayers whose identities she fraudulently used. And it noted the unlikelihood that Rittall would be able to pay anything in restitution. The district court concluded that, "but for the defendant's medical condition, I would, without any hesitation whatsoever, impose a high end of the guideline sentence on this defendant."

The district court next addressed how Rittall's physical and mental conditions impacted her sentence. Although Rittall had an "unusual set of medical conditions," the district court concluded those conditions were mostly treatable "with medication or changes in diet or the defendant's own cooperation," rendering them less serious and less influential over the sentence. As to Rittall's Anorexia Nervosa, the district court concluded that Rittall "has deliberately attempted to manipulate her sentence through her manipulation of her physicians, and it's unfortunately consistent with her track record in life." The district court mentioned a previous negative experience it had with FMC Carswell regarding a different defendant with Anorexia, but the court nonetheless concluded that Rittall "does well when she is hospitalized" and

that she "actually bears a greater risk of physical problems when she's left to her own devices." The district court noted that "there is sort of an irreducible risk of someone with her condition being at Carswell, but I think the risk at Carswell is no greater than the risk of her remaining [at home] in Augusta."

The district court concluded that, if Rittall "did not have the physical issues that she obviously does have, I would be looking at a high-range sentence. However, because of her physical problems, it strikes me that the correct sentence to impose is a low-end-of-the-guideline sentence and that is the sentence I will impose." The district court sentenced Rittall to a term of 63 months' imprisonment on both Counts 1 and 2, to run concurrently. Rittall appealed her sentence on both procedural and substantive grounds.

## II.

In sentencing appeals, "we first determine whether the sentence imposed is procedurally reasonable and then determine whether it is substantively reasonable." United States v. Clogston, 662 F.3d 588, 590 (1st Cir. 2011). Procedural errors may consist of "failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence—including an explanation for any

deviation from the Guidelines range." Gall v. United States, 552 U.S. 38, 51 (2007). We generally review procedural reasonableness for abuse of discretion, with subsidiary questions of law reviewed *de novo* and of fact for clear error. United States v. Carrasco-de-Jesús, 589 F.3d 22, 27 (1st Cir. 2009). When a defendant does not object to an alleged procedural error below, as is true here, we review for plain error, in which case a defendant must show (1) that an error occurred; (2) the error was clear or obvious; (3) the error affected the defendant's substantial rights; and (4) the error seriously impaired the fairness, integrity, or public reputation of the judicial proceedings. United States v. Duarte, 246 F.3d 56, 60 (1st Cir. 2001).

We review the substantive reasonableness of a sentence for abuse of discretion, taking into consideration the totality of the circumstances. United States v. Stone, 575 F.3d 83, 94 (1st Cir. 2009). Under the abuse-of-discretion standard, we will affirm unless the sentence falls outside the range of reasonable sentences. Id. We focus on whether the district court articulated a "plausible rationale" en route to a "defensible result," United States v. Martin, 520 F.3d 87, 96 (1st Cir. 2008), and give due deference "to the District Court's reasoned and reasonable decision that the § 3553(a) factors, on the whole, justified the sentence." Gall, 552 U.S. at 59–60.

- 8 -

Because Rittall did not object below, the parties acknowledge an open question in this Circuit as to whether a defendant must object to the substantive reasonableness of a sentence to avoid plain error review. See United States v. Ruiz-Huertas, 792 F.3d 223, 228 (1st Cir. 2015) (noting that the applicable standard of review "is somewhat blurred," but not deciding whether a defendant must "preserve a claim that the duration of a sentence is substantively unreasonable").

**A.**

Rittall's first complaint is that the district court committed plain procedural error by relying on her need for rehabilitation in imposing a prison sentence. The Sentencing Reform Act instructs sentencing courts to "recogniz[e] that imprisonment is not an appropriate means of promoting correction and rehabilitation." 18 U.S.C. § 3582(a). Sentencing courts thus "may not impose or lengthen a prison sentence to enable an offender to complete a treatment program or otherwise to promote rehabilitation." Tapia v. United States, 564 U.S. 319, 335 (2011). But a sentencing court does not err by discussing with the defendant "the opportunities for rehabilitation within prison or the benefits of specific treatment or training programs." Id. at 334. The "dividing line" between permissible and impermissible references to rehabilitative needs centers on whether the reference is "causally related to the length of the

- 9 -

sentence or, conversely, was merely one of a mix of sentencing consequences and opportunities." United States v. Del Valle-Rodriguez, 761 F.3d 171, 174 (1st Cir. 2014).

Rittall argues that the district court violated Tapia by relying on her rehabilitative needs—specifically her medical needs—to select the prison term. She points to the district court's discussion regarding how she

> does well when she is hospitalized. She actually bears a greater risk of physical problems when she's left to her own devices. So when she's hospitalized, she gains weight, and she is overseen, and she's controlled by other people, and she doesn't have the same risk that she has when she is out of the hospital and has an incentive, at least in the run up to this sentence, to manipulate the system.

Rittall argues an important factor in the district court's decision to impose a prison sentence was that she would do better in prison than at home.

Even if we assume Rittall is correct that a district court's concerns for a defendant's medical needs could result in Tapia error, Rittall's argument fails because she disregards the context in which the district court made these comments. Before turning to Rittall's health concerns, the district court explained that, "but for the defendant's medical condition, I would, without any hesitation whatsoever, impose a high end of the guideline sentence" based on other circumstances of Rittall's "extremely serious" crime. The only issue putting

downward pressure on the sentence was Rittall's serious medical issues and the BOP's ability to treat her, but the district court concluded that FMC Carswell could provide appropriate care. The district court was not imposing a prison sentence or basing the length of that sentence on the fact that Rittall might do better with constant medical supervision; it imposed the prison sentence because Rittall's crime and history called for the sentence and the district court was satisfied that she would fare no worse in prison than at home. As in Del Valle-Rodriguez, "the actual basis for the district court's sentencing determination is crystal clear": Rittall's serious crime and extensive criminal history. 761 F.3d at 175. "There is no hint of Tapia error." Id. at 176.

Rittall's supplemental authority of United States v. Thornton, 846 F.3d 1110 (10th Cir. 2017), does not convince us otherwise. In Thornton, the Tenth Circuit found that a district court erred (but did not plainly err) when the district court refused to vary downward or impose a lesser sentence based, in part, on a need for rehabilitation. The district court had commented that a lower sentence was not "in the defendant's best interest" as he "doesn't do well on his own. Never has. And he needs all kinds of services that he can get and will get in prison." Id. at 1113. The district court concluded, "I am firmly convinced that defendant needs enough time in prison to

- 11 -

get treatment and vocational benefits." Id. at 1114–15. While the Tenth Circuit determined the district court committed Tapia error by refusing to sentence below the Guidelines, the same cannot be said here. Instead, the district court refused to sentence below the Guidelines because of Rittall's serious offense, not because she needed a sufficient amount of time in prison to receive medical treatment and supervision. The district court's comments regarding how Rittall's health fared on her own versus while in inpatient care related to the district court's concern that the BOP might not be able to address her many health concerns. Ultimately, the district court was satisfied that the BOP could adequately treat Rittall and thus imposed a prison sentence in line with its view of Rittall's serious criminal history and current crime. Rittall fails on the first prong of plain error review because we see no error here.

**B.**

Rittall next asserts the district court committed plain procedural error by effectively treating the Guidelines as mandatory rather than advisory when it refused to vary below the Guidelines range based on her physical and mental conditions. See Gall, 552 U.S. at 51 (stating that a district court commits procedural error by treating the Guidelines as mandatory). She acknowledges that the district court called the Guidelines

- 12 -

"advisory," but she points to the following discussion to demonstrate the district court nonetheless treated the Guidelines as mandatory when it came to imposing a prison sentence or allowing for an at-home probationary sentence:

> Here, the defendant, at least under the guidelines, would not be entitled to a straight probationary sentence, so in order to go outside the guideline, it's the courts view that it could not downward depart under the guideline and award simply a straight probationary sentence. The court has the obvious authority under 3553(a) to impose any sentence that is statutorily authorized, but to do so, it would be a nonguideline sentence if it were straight probation.

Rittall does not assert the district court erred in refusing to depart based on U.S.S.G. § 5H1.3, which allows for departures based on the mental and emotional condition of the defendant, or § 5H1.4, which allows for a departure based on the physical condition of a defendant, but rather contends that the district court erred in applying the same departure standard while it was discussing the possibility of a variance. Under the standards for departures under §§ 5H1.3 and 5H1.4, this Court has recently reaffirmed that "[d]epartures based upon health problems are discouraged and can only be justified if the medical problems are present in unusual kind or degree." United States v. Herman, 848 F.3d 55, 59 (1st Cir. 2017) (quoting United States v. LeBlanc, 24 F.3d 340, 348 (1st Cir. 1994)), petition for cert. filed Feb. 14, 2017. To "be entitled to a departure, a defendant must establish that her 'life would be

- 13 -

threatened or shortened by virtue of being incarcerated' or that 'the Bureau of Prisons would be unable to adequately accommodate [her] medical needs.'" Id. (alteration in original) (quoting LeBlanc, 24 F.3d at 349); see also United States v. Díaz-Rodríguez, No. 15-1307, 2017 WL 1137016, at *5 (1st Cir. March 17, 2017) (affirming a district court's refusal to depart when the district court found the defendant would receive adequate treatment while in custody). Rittall complains that the district court held her to these same high standards while considering whether to vary, which, in her view, shows the district court treated the Guidelines as mandatory.

We do not read the record the same way Rittall does. Where she sees the district court treating the Guidelines as mandatory, we see the district court recognizing its authority to vary under 18 U.S.C. § 3553(a) and simply refusing to do so. The district court started with the "guideline sentence range of 63 to 78 months, which is advisory." It then turned to the factors set forth in 18 U.S.C. § 3553(a), including Rittall's serious health concerns. In our view, the essence of Rittall's complaint is that the district court "attached too little weight" to her health concerns, but "deciding how much weight should be given to particular factors in a specific case is, within broad limits, the core functioning of a sentencing court." United States v. Maguire, 752 F.3d 1, 7 (1st Cir.

- 14 -

2014). Rittall cannot seriously complain that the district court did not carefully consider her health issues—those problems took center stage in her seven pre-sentencing hearings and at the sentencing hearing itself. And in the end, the district court decided that her medical issues put downward pressure on her sentence to the low end of the Guidelines, but no lower. The district court was well within its discretion to decide that the other 3553(a) factors—primarily the nature of the crime, the history and characteristics of the defendant, the need for restitution, and the need to afford adequate deterrence—outweighed any downward pressure her unusual health issues presented, particularly after finding that the BOP could adequately treat her. The district court, aware that the Guidelines were not mandatory, reasonably declined to vary below them and did not commit plain procedural error, or, for that matter, any error at all. See Maguire, 752 F.3d at 7 ("[D]iscretionary refusals to vary or depart are open to reasonableness review in accordance with an abuse of discretion standard.").

## c.

Rittall's third point of error is that the district court imposed a substantively unreasonable sentence when it refused to vary downward from the Guidelines range. She asserts this is "one of the rare cases in which a sentence imposed within the

Guidelines range is substantively unreasonable" because (1) the Guidelines range did not take into account her physical and mental conditions, including her long battle with Anorexia Nervosa and the host of other health problems she has faced; (2) the amount of intended and actual loss, while not nominal, was also not exorbitant and the Guidelines fully accounted for that loss; (3) several of her previous convictions that placed her in a category V criminal history were relatively minor, such as operating an unregistered vehicle, operating with a suspended license, and negotiating a worthless instrument and theft with loss amounts of less than $7,000; and (4) she pleaded guilty to the Information, saving the government from presenting the case to a grand jury or a jury, yet the district court did not take that into account and instead disqualified her from a reduction because she stole less than $5 of melatonin while she was released pending sentencing.

Because of an open question in this Circuit on the standard of review, the parties disagree as to whether we review for plain error or abuse of discretion, but as in Ruiz-Huertas, "[w]e need not resolve this apparent anomaly today" because even under the more favorable abuse of discretion standard, the outcome is the same. 792 F.3d at 228. We discern no abuse of discretion, let alone plain error. The district court carefully considered and balanced a host of competing sentencing factors,

and it explained its rationale on its way to reaching a defensible result. The district court started with the advisory guideline range of 63 to 78 months. It then outlined Rittall's history and characteristics, concluding that her prior convictions "reflect a very strong streak of dishonesty" and noting that jail has not deterred her from committing additional crimes. Next, the district court turned to the nature and circumstances of the offense and emphasized that Rittall's scheme was "quite elaborate," involving over two dozen people over six years. The district court also carefully considered Rittall's health concerns and concluded that, although serious, the BOP could address those concerns at FMC Carswell. Finally, the district court noted the victims' reactions to Rittall's offense and the need to deter similar behavior. The district court concluded that Rittall merited a significant term of imprisonment, one that, but for her mental and physical issues, would be at the high end of the Guidelines range. Because of her health concerns, the district court imposed a sentence at the low end of that range. This is a defensible result and within the range of reasonable sentences. The district court did not impose a substantively unreasonable sentence.

## D.

Rittall's final complaint is that the district court imposed a sentence exceeding the statutory maximum on Count 1.

- 17 -

The district court sentenced Rittall to 63 months' imprisonment on both Count 1 and Count 2, to run concurrently, even though Count 1 had a statutory maximum of five years' (60 months') imprisonment. Rittall did not object before the district court, and thus, we review for plain error.

In United States v. Almonte-Nunez, 771 F.3d 84 (1st Cir. 2014), we faced an almost identical situation: the district court sentenced the defendant to a 150-month concurrent sentence on two counts that had been grouped together, despite the 120-month statutory maximum on one of the counts. That error was clear and obvious, as "Guideline calculations simply cannot usurp a maximum level of imprisonment established by Congress." Id. at 92. Even though fixing the above-maximum sentence would not affect the defendant's ultimate sentence, we explained that, "under normal circumstances, our discretion should be exercised in favor of trimming back an excessive sentence." Id.

> To begin, in an appropriate case, leaving intact a sentence that exceeds a congressionally mandated limit may sully the public's perception of the fairness of the proceeding. That perception, in turn, may threaten respect for the courts and may impair their reputation. From the defendant's standpoint, collateral consequences may arise as a result of an above-the-maximum sentence imposed on a particular count. The existence and extent of these collateral consequences are notoriously difficult to predict, but they have the potential to harm the defendant in a myriad of ways. It strikes us as both unwise and unfair to place the risk of such harm on the defendant where, as here, the excessive sentence is easy to correct. In the last analysis, correcting such an

- 18 -

error will rarely tax judicial resources and may (depending on what an uncertain future brings) provide some small benefit to the defendant. When (as in this case) there are no countervailing circumstances, we believe that the interests of justice ordinarily will tip the scales in favor of relief.

Id. (citations omitted).

Following the approach in Almonte-Nunez, we will remand for the district court to enter a modified sentence in accordance with the statutory maximum of 60 months' imprisonment on Count 1.

## III.

For the reasons stated above, we order the district court to enter a modified sentence on Count 1 consistent with the statutory maximum of 60 months' imprisonment. We otherwise affirm.