# United States Court of Appeals
## For the First Circuit

No. 14-1676

UNITED STATES OF AMERICA,

Appellee,

v.

DAVID OPPENHEIMER-TORRES,

Defendant, Appellant.


APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Daniel R. Domínguez, U.S. District Judge]


Before

Torruella, Kayatta, and Barron,
Circuit Judges.


Lisa Aidlin, on brief for appellant.
Rosa Emilia Rodríguez-Vélez, United States Attorney, Nelson Pérez-Sosa, Assistant United States Attorney, Chief, Appellate Division, and Thomas F. Klumper, Assistant United States Attorney, on brief for appellee.


November 13, 2015

**KAYATTA**, **Circuit Judge**. Defendant-appellant David Oppenheimer-Torres ("Oppenheimer") appeals his sentence after pleading guilty of conspiring to possess and distribute illegal drugs near a public housing facility, in violation of 21 U.S.C. §§ 841(a)(1), 846, and 860, and of possessing a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1)(A). Because the sentence was within the range specified in a plea agreement containing a waiver of appeal, because we find that the prosecutor's false start in performing the prosecutor's duties under that plea agreement did not constitute a breach of the agreement, and because we find in Oppenheimer's arguments no other request for setting aside the agreement, we dismiss the appeal.

## I.  Background

Because this appeal follows a guilty plea, we derive the facts from the plea agreement, the change-of-plea colloquy, the unchallenged portions of the presentence investigation report ("PSR"), and the sentencing hearing transcript. United States v. Ocasio-Cancel, 727 F.3d 85, 88 (1st Cir. 2013). From 2004 to 2012, Oppenheimer was the leader of a drug trafficking organization operating in the public housing projects of Carolina, Puerto Rico. Oppenheimer acted as an "enforcer" and oversaw the supply and distribution of cocaine, heroin, and other drugs. In May 2012, a grand jury indicted Oppenheimer, along with 73 other individuals,

- 1 -

on six drug-trafficking-related charges.  He pleaded guilty to conspiring to traffic drugs near public housing and to aiding and abetting the use or carrying of a firearm in connection with drug trafficking.  The district court dismissed the remaining counts.

## A.        The Plea Agreement

The written plea agreement (the "Agreement") executed in accord with Federal Rule of Criminal Procedure 11(c)(1)(B) stipulated that each party would recommend a sentence that fell within the range of 135-168 months on the conspiracy charge.  The parties selected this range under the United States Sentencing Guidelines by, in relevant part, assuming a base level Criminal History Category (in other words, no criminal history).  The Agreement further provided that the government would not recommend a sentence in excess of 168 months on the conspiracy charge even if the assumed Criminal History Category turned out to be understated.  Finally, the Agreement called for a statutory minimum sentence of 60 months for the firearm charge, to run consecutively. All remaining counts were dismissed.

The Agreement included a clause waiving Oppenheimer's right to appeal "provided that the defendant is sentenced in accordance with the terms and conditions set forth in the Sentence Recommendation provision of this Plea Agreement."  At the change of plea hearing, the court determined that Oppenheimer's guilty plea was intelligent and voluntary.

**B.**      **The Sentencing Hearing**

After reading from the Agreement at sentencing, the judge asked the prosecutor for the government's position, stating "you have the right to request the maximum."  The prosecutor answered:

> That is correct, Your Honor.  And the United States will request that we stand by what we have recommended, and that the United States would be able to argue for a sentence within the applicable guideline range.
>
> In this case, I understand that the applicable guideline range is a level of 33.  And the defendant's criminal history category turns out to be criminal history II, based on the fact that the conviction in the year 2003 was and should be considered relevant conduct for purposes of making that determination.
>
> That being the case, the United States, based on what has been proffered to the Court, when the Court asked us in relation to the defendant's participation in the conspiracy, request [sic] that he be sentenced to the maximum of the applicable guideline range....
>
> [T]he United States requests that the Court will take all these factors into consideration in imposing the maximum sentence that could be imposed when taking into consideration the defendant's criminal history category and the total offense level that was stipulated by the parties in this case.

This was the first mention in the record of the fact that the PSR calculated a Criminal History Category of II, rather than I as assumed in the Agreement.  Slightly later in the proceeding, immediately after an off-the-record discussion at sidebar between

the Court and the Probation Officer, the following exchange occurred:

> THE COURT: United States, your position is we ought to stay with 135 to 168?
>
> [THE PROSECUTOR]: That's the criminal history, I understand that's the agreement, and it was an agreement that was also made with Counsel Contreras, that the 2003 conduct could be considered relevant conduct for the purpose of determining the defendant's criminal history category.
>
> THE COURT: But we are not including that all.
>
> [THE PROSECUTOR]: So it is not to be included. And then it's total offense level 33, with a criminal history of II, and the guideline range will be 135, 168.
>
> THE PROBATION OFFICER: 151 to 181.
>
> [THE PROSECUTOR]: 151 to 188.
>
> THE COURT: 151 to 188, but your agreement is at 138 [sic], right?
>
> [DEFENSE COUNSEL]: But page 7 of the agreement, it says: "Notwithstanding, the parties specifically agree to the above-mentioned sentence recommendation irrespective of defendant's criminal history..."
>
> THE COURT: Criminal history.
>
> [DEFENSE COUNSEL]: And resulting guideline range, and it will be 135 to 168.
>
> THE COURT: So it was known then by the United States that he could have had a higher history?
>
> [DEFENSE COUNSEL]: Obviously, Your Honor.

THE COURT: All right. Okay.

At that point, it was clear to the court that the government's recommendation was as in the Agreement, and even the belatedly-enlightened prosecutor thereafter sought a high-end sentence of only 168 months on the conspiracy charge. Eliminating any doubt, the judge reiterated that under a Criminal History Category of II, the guidelines sentencing range would have been 151 to 188 months, "but the parties stipulated 135 to 168, irrespective if he was history I or II." The judge then imposed a total prison sentence of 150 months for the conspiracy charge and 60 months for the firearm charge for a total of 210 months--a sentence in the middle of the range contemplated by the Agreement.

## II. Analysis

The government argues that this appeal must be dismissed because Oppenheimer entered into a plea agreement under which he waived any right to appeal if he was "sentenced in accordance with the terms and conditions set forth in the Sentencing Recommendation provision of [the plea agreement]." Oppenheimer replies that he must be re-sentenced because the government broke the plea agreement, or because there were alleged defects in the acceptance of his plea in the first instance. For the following reasons, we agree with the government.

**A.**

Oppenheimer first argues that his sentencing was not "in accordance with the terms and conditions set forth in the Sentencing Recommendation provision" of the Agreement because the prosecutor breached the Agreement by first recommending a sentence not in accord with the agreed recommendation. Therefore, reasons Oppenheimer, the condition precedent to triggering the waiver never occurred.

The government replies that when the transcript is viewed as a whole, it reveals no breach of the plea agreement because the prosecutor corrected the initial misstep. At one time, such an argument by the government may not have reached first base, as the law in this circuit was that an erroneous sentencing recommendation in breach of a plea agreement was not cured by withdrawal in favor of a belatedly compliant recommendation. United States v. Kurkculer, 918 F.2d 295, 302 (1st Cir. 1990). Subsequently, however, the United States Supreme Court expressly stated that "some breaches [of agreements for sentencing recommendations] may be curable upon timely objection—for example, where the prosecution simply forgot its commitment and is willing to adhere to the agreement." Puckett v. United States, 556 U.S. 129, 140 (2009). So the question potentially posed in this case is whether the prosecutor's misstep in this case was one that could be satisfactorily cured by correction.

Of course, we only need answer this question directly if the claim of error was preserved. In fact, it was not. Unlike the defendant in Kurkculer, Oppenheimer never suggested to the district court that the error was incurable, or that the particular cure was ineffective. Most notably, Oppenheimer did not ask for the relief he now seeks (re-sentencing by a different judge who would not have heard the erroneous recommendation). Instead, having secured a corrected recommendation in accordance with the plea agreement, he took his shot at seeing what sentence he received. To now argue for the first time on appeal that the prosecutor's error was not cured, and that the district court judge should have declined to issue a sentence, Oppenheimer need carry the burden of plain error review by showing: "(1) that an error occurred (2) which was clear or obvious and which not only (3) affected the defendant's substantial rights, but also (4) seriously impaired the fairness, integrity, or public reputation of judicial proceedings." United States v. Marchena-Silvestre, No. 14-1404, 2015 WL 5813344, at *3 (1st Cir. Oct. 6, 2015) (quoting United States v. Duarte, 246 F.3d 56, 60 (1st Cir. 2001)).

We can find no obvious error in the district court's decision to proceed following the prosecution's unambiguous correction of its initial error. In context it is abundantly clear that the insufficiently prepared prosecutor at the sentencing hearing was simply confused about the nature of the Agreement that

another lawyer in her office had drafted. Once coached by the sentencing judge and alerted by defense counsel to the actual language of the Agreement that the prosecutor had apparently not read, the prosecutor abandoned without protest or equivocation her uninformed recommendation.

It was apparent all along to the district court that the false start by the prosecutor who covered the hearing was the product of ignorance rather than a sign that the government had second thoughts. This is not a record in which the misstep conveyed a message that the ultimate recommendation was insincere. United States v. Alcalá-Sánchez, 666 F.3d 571, 576 (9th Cir. 2012) (finding a breach where the prosecutor's "equivocations left room for doubt about the government's position"). Rather, this is a case in which the transcript as a whole makes clear that all present (except, initially, the prosecutor) knew plainly and correctly that the government's considered recommendation was as in the Agreement. In short, it is not obvious that there was a breach that was not adequately corrected as the Supreme Court anticipated in Puckett. On plain error review, Oppenheimer therefore fails to convince us that he was not sentenced in accord with his plea agreement.

**B.**

Oppenheimer next argues that his guilty plea itself was invalid for two reasons. First, he claims that the voluntariness

of his guilty plea was vitiated by an alleged misstatement of the law made by the district court during sentencing. He further alleges that the factual basis for his guilty plea was inadequate under Rule 11 of the Federal Rules of Criminal Procedure.

Oppenheimer never raised these arguments in the district court, and thus would confront the burden, at least, of plain error review should we consider them on appeal. On this particular appeal, though, we need not consider these arguments at all because Oppenheimer quite carefully--and likely wisely--does not ask us to free the parties from the terms of the Agreement. Rather, he asks only that we remand for resentencing under that very Agreement. This argument is precisely the equivalent of asking us to affirm the Agreement while simultaneously freeing him of one of its central terms (the appeal waiver). Such an attempt to retain the benefit of the bargain struck with the government while revoking part of the consideration for that bargain must fail. See United States v. Knox, 287 F.3d 667, 671-72 (7th Cir. 2002) (client's desire not to withdraw guilty plea should preclude attacks on voluntariness and adequacy of plea); United States v. Terwilinger, 69 F.3d 534 (4th Cir. 1995)(unpublished)(per curiam) ("Because [defendant] does not wish to withdraw his plea, any omission in questioning during the Rule 11 hearing by the district court did not affect [the defendant]'s substantial rights."); Vega v. United States, Nos. CR-F-05-389, CR-F-02-5408, 2008 WL 2915393, at *2

- 9 -

(E.D. Cal. July 25, 2008) ("Petitioner's contention that he does not seek . . . to set aside his guilty plea negates any validity to his arguments that the plea was not intelligently entered.").

## III.  Conclusion

Because we find that Oppenheimer was sentenced "in accordance with the terms and conditions set forth" in the Agreement, and there being no cause to consider whether the Agreement should be set aside, the waiver of appeal he signed is enforceable and we lack jurisdiction to consider his appeal.  It is therefore <u>dismissed</u>.