**Not for Publication in West's Federal Reporter**

# United States Court of Appeals
## For the First Circuit

Nos. 15-1943
     15-1944

UNITED STATES OF AMERICA,

Appellee,

v.

RAMÓN MOLINA-QUINTERO,

Defendant, Appellant.

APPEALS FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO
[Hon. Juan M. Pérez-Giménez, U.S. District Judge]

Before
Lynch, Lipez, and Thompson,
Circuit Judges.

Paul M. Glickman and Glickman Turley LLP on brief for appellant.

Rosa Emilia Rodríguez-Vélez, United States Attorney, Mariana E. Bauzá-Almonte, Assistant United States Attorney, Chief, Appellate Division, and Mainon A. Schwartz, Assistant United States Attorney, on brief for appellee.

March 17, 2017

.

**THOMPSON**, <u>**Circuit Judge**</u>.

PREFACE

Ramón Molina-Quintero ("Molina") believes the government breached a plea agreement he had entered into with the government and so says he should get resentenced by a different district judge. Spying no plain error, we affirm.

BACKGROUND[1]

*Plea Agreement*

Molina pleaded guilty to drug and firearm charges under a nonbinding plea agreement that resolved two indictments filed against him. After working through some adjustments, the agreement arrived at a total offense level 33 for the two drug charges. The agreement did not specify either his criminal history score or criminal history category, though it did forecast possible sentencing ranges for the drug charges based on criminal history categories I (135-168), II (151-188), and III (168-210).[2] For the drug charges, the parties promised to jointly recommend a sentence at "the lower end of the applicable guideline range for a total

---

[1] As per usual, we draw the background facts from the plea agreement, the unobjected-to parts of the presentence report, and the transcripts from the relevant court hearings. <u>See, e.g.</u>, <u>United States</u> v. <u>Romero-Galindez</u>, 782 F.3d 63, 65 n.1 (1st Cir. 2015).

[2] These ranges were for the drug charges together, because they were grouped for sentencing purposes, as required by the guidelines. <u>See</u> U.S.S.G. § 3D1.2(d).

- 2 -

offense level 33."  And for the firearm charge, the parties promised to jointly recommend a 60-month term, to run consecutively to whatever sentence the judge imposed on the drug charges.  "Any recommendation other than what is stated herein," the agreement added, "constitute[s] a breach of the plea agreement."

*Presentence Report*

Probation also found that Molina's total offense level was 33, which included a 2-level enhancement because the drug trafficking occurred near a protected location.  And probation calculated his criminal-history category as II because of his 1994 conviction for carrying a weapon without a license.  All of this produced a proposed sentencing range of 151-188 months.

*Sentence*

At sentencing, Molina's lawyer asked the judge to (a) jettison the protected-location enhancement because the plea agreement "did not contemplate" adding "points" for that enhancement; (b) lower his offense level by 2 levels based on Amendment 782 to the sentencing guidelines;[3] and (c) reduce his criminal-history score because of the 1994 conviction's supposed remoteness.  The judge asked the prosecutor for her response.  And

---

[3] That amendment retroactively lowered by 2 levels the base offense levels for many drug crimes.  See United States v. Alejandro-Montañez, 778 F.3d 352, 362 (1st Cir. 2015).

- 3 -

she started off with some background about the plea negotiations, saying that "we lowered the amount of drugs" attributed to him to reach an agreement.  She conceded that the plea agreement did not mention the possibility of a protected-location enhancement.  Noting how the plea agreement contained a stipulated total offense level of 33, she also said — wrongly, it turns out, without being contradicted by defense counsel then and there — that "the parties agreed that each party was going to argue for a sentence within the range."  But, she quickly added, "the government at this time is standing by what was recommended in the plea agreement" and so would not push for a protected-location enhancement.  The government would not oppose the 2-level reduction under Amendment 782, she intimated, even though that would result in a total offense level lower than the one spelled out in the plea agreement.  But she argued against Molina's bid to have the judge reduce his criminal-history category, saying he should "be considered a criminal history category II."

And now we come to the money quote, as Molina sees it.  After saying all this to the judge, the prosecutor then said that Molina "should be sentenced to the higher end of the applicable range."  As she started to go into the stipulated facts — which she noted included his "preserv[ing] and protect[ing] the narcotics and profits of the organization through the use of

intimidation" — the judge interrupted and asked her follow-up questions about the defense's push for a lower guidelines calculation. Among her responses, the prosecutor stressed that the government could not ask for a protected-location enhancement because "that would be a breach of the plea agreement." During this back-and-forth between the prosecutor and the judge, Molina's lawyer broke in to object to the prosecutor's misstated recommendation for a sentence at the higher end of the sentencing range. But the judge said that he was "still trying to resolve the . . . objections you have with the presentence report."

After explaining why the protected-location enhancement applied and the prior conviction counted toward his criminal-history points,[4] the judge gave defense counsel a chance to finish his comment on the government's sentence recommendation. The prosecutor's "upper end of the guideline" recommendation, defense counsel said, was "in clear breach" of the plea agreement, "[u]nless she wishes to withdraw that, I don't know." The prosecutor responded immediately, saying "that is correct. And we stand correct[ed]." She then explained her mistake, saying that most of the plea agreements in this multi-defendant drug-conspiracy matter specified a sentencing range rather than a point

---

[4] We need not get into the judge's reasons because Molina does not challenge the ruling on those two issues here.

- 5 -

within that range but that Molina's agreement was different: "[W]e withdraw that because . . . we usually do that within a range. But in this particular case, in order to reach a recommendation, we agreed that . . . the government was going to agree for the lower end of the applicable guideline range."

Taking a belt-and-suspenders approach, the judge made doubly sure what the government's recommendation was:

> THE COURT: That [Molina] be sentenced to the lower end of the applicable guideline range . . . [t]hat is the recommendation of the government?
>
> [THE PROSECUTOR]: Yes.
>
> THE COURT: So the statement you previously made to the higher end, referring to the higher end of the guideline —
>
> [THE PROSECUTOR]: We withdraw that one.
>
> THE COURT: — you withdraw that?
>
> [THE PROSECUTOR]: Yes, Your Honor.

Molina's counsel did not object to the prosecutor's revised recommendation, despite being given the chance to voice his objection. And counsel did not say that the prosecutor's error was incurable, that the cure was not effective, or that his client should be sentenced by a judge who had not heard the misstated recommendation.

After listening to each side's lawyers, the judge proceeded to impose Molina's sentence. The 2-level increase for

a protected location and the 2-level decrease pursuant to Amendment 782 effectively cancelled each other out. And skipping over details not relevant to this appeal, we see that the judge eventually settled on a total offense level of 33 (mirroring the total offense level set out in the plea agreement). Paired with a criminal-history category of II, Molina's sentencing range was 151-188 months. After considering the offense elements, the parties' plea agreement, and the pertinent 18 U.S.C. § 3553(a) sentencing factors,[5] the judge sentenced Molina to concurrent 188-month sentences for the two drug charges and a consecutive 60-month term for the firearm charge.

From this sentence, Molina appeals, arguing that because the government breached the plea agreement, we must vacate and remand to a different judge for resentencing. The government argues otherwise, unsurprisingly.[6]

---

[5] The judge noted, for example, that this was Molina's "seventh known arrest and his fourth conviction" and that he had proven to be a serial probation violator.

[6] The government insists "that the corrected misstatement was not a breach," or, "if it was a breach," that "it was satisfactorily cured." But this distinction does not matter, since, either way, a sentencing remand is not called for. Cf. United States v. Oppenheimer-Torres, 806 F.3d 1, 4 (1st Cir. 2004) (concluding both that the prosecutor's misstatement "did not constitute a breach of the agreement" and that it was "not obvious that there was a breach that was not adequately corrected").

**DISCUSSION**

*Standard of Review*

The parties dispute which standard of review governs, *de novo* — Molina's preferred standard; or plain error — the government's preferred standard. We side with the government: Molina never suggested to the judge that the prosecutor's misstep was incurable or that her correction was not enough to cure the error. And he did not ask for the relief he now wants — resentencing before a different judge. So we review only for plain error, see Oppenheimer-Torres, 806 F.3d at 4 — a famously difficult-to-satisfy standard, which requires Molina to show "error, plainness, prejudice to [him,] and the threat of a miscarriage of justice," see United States v. Torres–Rosario, 658 F.3d 110, 116 (1st Cir. 2011); see also Puckett v. United States, 556 U.S. 129, 142 n.4 (2009).

*Analysis*

In bygone days we routinely said that a prosecutor's "erroneous sentencing recommendation in breach of a plea agreement was not cured by withdrawal in favor of a belatedly compliant recommendation." Oppenheimer-Torres, 806 F.3d at 4 (citing United States v. Kurkculer, 918 F.2d 295, 302 (1st Cir. 1990), for our old approach). But then along came Puckett, where the high Court explained that "*some* [plea agreement] breaches may be curable upon

- 8 -

timely objection — for example, where the prosecution simply forgot its commitment and is willing to adhere to the agreement." 556 U.S. at 140.

With this in mind, and assessing the prosecutor's misstep in light of the transcript as a whole, we see "no obvious error in the [judge's] decision to proceed following the prosecution's unambiguous correction of its initial error." See Oppenheimer-Torres, 806 F.3d at 4. Remember: Before the prosecutor made the complained-about recommendation, she took pains to explain that the government intended to fulfill its plea-agreement obligations, as evidenced by her saying that the prosecution stood by the agreement's recommendations — which is why, for example, she refused to push for a protected-location enhancement (because the agreement did not include that enhancement). Avoiding a breach was a major goal of hers, we can fairly infer from the transcript. And although she got the recommendation wrong at first — asking for the high end instead of the low end of the sentencing range — she corrected the error when made aware of it. She also did so readily and forcefully — not grudgingly or misleading, as Molina suggests. It is safe to say, then, that all the sentencing-hearing participants "knew plainly and correctly that the government's considered recommendation was

as in the [a]greement."  See id.  All of which means that Molina cannot show plain error.  See id.

Arguing against this conclusion, Molina blasts the prosecutor for not calling her "breach . . . inadvertent."  But the prosecutor did make an inadvertence claim.  Recall:  The prosecutor explained to the judge that other recommendations in this multi-defendant case were for sentences within certain ranges, rather than for a specific point within that range. Molina's case, it turns out, did involve dozens of defendants. And Molina was not the only defendant surnamed Molina-Quintero. Interestingly, the other Molina-Quintero's plea agreement called for a sentence recommendation "within the applicable guideline range for a total offense level of thirty three (33)" — for what it is worth, the misstated recommendation here would have been perfectly proper under that agreement.  All in all, looking at the whole picture, we view the prosecutor's unfortunate misstatement as an indication of confusion on her part — not as "a sign that the government had second thoughts" about the plea agreement's recommendation.  See id.

Insisting that the prosecutor neither "defend[ed]" the agreement's "low-range" recommendation nor "counteract[ed] the premises" undergirding her "high-range" proposal, Molina relies on pre-Puckett caselaw — Kurkculer, for example — to argue that the

- 10 -

prosecutor's withdrawal of the offending recommendation with a substitution of the agreed-upon one could not "cure" the problem because "[t]he damage had already been done."  But the Supreme Court's Puckett decision and our decision in Oppenheimer-Torres knock the legs out from under that argument.  See Oppenheimer-Torres, 806 F.3d at 4 (noting how Puckett changed the law in this circuit).

The bottom line is that Molina fails the plain-error test because, as in Oppenheimer-Torres, "it is not obvious that there was a breach that was not adequately corrected as the Supreme Court anticipated in Puckett."  See Oppenheimer-Torres, 806 F.3d at 4.

## CONCLUSION

Our work over, we *affirm* Molina's sentence.