[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 20-11774
Non-Argument Calendar
_____

D.C. Docket No. 4:19-cv-01250-LCB

TONY GRIFFIN,

Plaintiff-Appellant,

versus

SOCIAL SECURITY ADMINISTRATION, COMMISSIONER,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Alabama
_____

(January 6, 2021)

Before WILSON, ROSENBAUM, and ANDERSON, Circuit Judges.

PER CURIAM:

Tony Griffin appeals the district court's order affirming the Social Security Commissioner's ("Commissioner") denial of his applications for supplemental security income ("SSI"). Griffin argues on appeal that the Appeals Council erred when it denied review without mentioning Dr. June Nichols's psychological evaluation and holding that the post-decision records were not chronologically relevant, and that the denial was not supported by substantial evidence when the evidence submitted to the Appeals Council was considered.

In a social security case, we review the agency's legal conclusions *de novo*, and its factual findings to determine whether they are supported by substantial evidence. *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1260 (11th Cir. 2007). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Winschel v. Comm'r of Soc. Sec. Admin.*, 631 F.3d 1176, 1178 (11th Cir. 2011). "We may not decide the facts anew, reweigh the evidence, or substitute our judgment for that of the Commissioner." *Id.* (quotation marks and brackets omitted). We have applied the harmless error doctrine to Social Security appeals. *See Diorio v. Heckler*, 721 F.2d 726, 728 (11th Cir. 1983). Whether evidence meets the new, material, and chronologically relevant standard is a question of law subject to *de novo* review. *Washington v. Soc. Sec. Admin.*, *Comm'r*, 806 F.3d

2

1317, 1320-21 (11th Cir. 2015).  The Appeals Council commits reversible error when it improperly refuses to consider evidence.  *Id.*

A disability is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).

An individual claiming Social Security disability benefits must prove that she is disabled.  *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005).  The Social Security regulations establish a five-step, "sequential" process for determining whether a claimant is disabled.  20 C.F.R. § 416.920(a)(1).  Throughout the process, the burden is on the claimant to introduce evidence in support of her application for benefits.  *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003).  If an administrative law judge ("ALJ") finds a claimant disabled or not disabled at any given step, the ALJ does not go on to the next step.  20 C.F.R. § 416.920(a)(4).  At the first step, the ALJ must determine whether the claimant is currently engaged in substantial gainful activity.  *Id.* § 416.920(a)(4)(i), (b).  At the second step, the ALJ must determine whether the impairment or combination of impairments for which the claimant allegedly suffers is "severe."  *Id.* § 416.920(a)(4)(ii), (c).  At the third step, the ALJ must decide whether the claimant's severe impairments meet or medically equal a listed impairment.  *Id.*

3

§ 416.920(a)(4)(iii), (d).  Where, as here, the ALJ finds that the claimant's severe impairments do not meet or equal a listed impairment, the ALJ must then determine, at step four, whether she has the residual functional capacity ("RFC") to perform her past relevant work.  *Id.* § 416.920(a)(4)(iv), (e)-(f).  "[RFC] is an assessment . . . of a claimant's remaining ability to do work despite his impairments." *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997).  If the claimant cannot perform her past relevant work, the ALJ must then determine, at step five, whether the claimant's RFC permits her to perform other work that exists in the national economy.  20 C.F.R. § 416.920(a)(4)(v), (g).  Finally, the burden shifts back to the claimant to prove she is unable to perform the jobs suggested by the Commissioner.  *Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987).

Generally, a claimant may present evidence at each stage of the social security administration's administrative review process.  *See Hargress v. Soc. Sec. Admin., Comm'r*, 883 F.3d 1302, 1308–09 (11th Cir. 2018).  If a claimant presents evidence after the ALJ's decision, the Appeals Council must consider whether the evidence is: new; chronologically relevant, i.e., it relates to the period on or before the ALJ's hearing decision; and material, i.e., there is a reasonable probability that it would change the administrative result.  *See id.* at 1309.  The Appeals Council must grant the petition for review if the ALJ's decision is contrary to the weight of the evidence, including the new evidence.  *Id.*  The Appeals Council is not

4

required to provide a detailed rationale for denying review. *Mitchell v. Soc. Sec. Admin*, *Comm'r*, 771 F.3d 780, 784 (11th Cir. 2014).

Medical opinions based on treatment occurring after the date of the ALJ's decision may be chronologically relevant. *Washington*, 806 F.3d at 1322. In *Washington*, the claimant submitted to the Appeals Council a psychologist's evaluation and accompanying opinion about the degree of the claimant's mental limitations, which were prepared seven months after the ALJ's decision. *Id.* at 1319-20. We concluded that the psychologist's materials were chronologically relevant because: (1) the claimant described his mental symptoms during the relevant period to the psychologist, (2) the psychologist had reviewed the claimant's mental health treatment records from that period, and (3) there was no evidence of the claimant's mental decline since the ALJ's decision. *Id.* at 1319, 1322-23 (limiting our holding to "the specific circumstances of this case"). We found that the medical opinion submitted to the Appeals Council was material because, if accepted, the opinion could establish that the claimant had an impairment that met or equaled a specific listed disability. *Id.* at 1321.

But we have held that the Appeals Council correctly declined to consider new medical records because the records were "about a later time" than the ALJ's decision, and, therefore, did not affect the decision about whether the claimant was disabled during the relevant period. *Hargress*, 883 F.3d at 1309. In *Hargress*, the

5

Appeals Council denied the appellant's petition for review and refused to consider her newly-submitted evidence—which included medical records dated after the ALJ's decision—stating that the new records were "about a later time" than the ALJ's decision, and therefore did not affect the ALJ's decision as to whether she was disabled prior to the date of that decision. *Id.* We stated that "the Appeals Council declined to consider these new medical records because they were not chronologically relevant. The Appeals Council was not required to give a more detailed explanation or to address each piece of new evidence individually." *Id.* We also held that the new records were not relevant because nothing in them indicated that the doctors had reviewed the appellant's medical records, or that the information in them related to the period at issue. *Id.* at 1309–10. We held that newly submitted medical records from a doctor who had previously submitted medical records were not material because the new records contradicted the doctor's other records and were inconsistent with medical records created during the relevant time period. *Id.* Because we found that the Appeals Council was not required to consider the immaterial evidence, we declined to address the claimant's argument that the denial of benefits was erroneous when the new evidence was considered. *Id.* at 1310.

The ALJ may reject the opinion of any physician if the evidence supports a contrary conclusion. *Sryock v. Heckler*, 764 F.2d 834, 835 (11th Cir. 1985). The

6

more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight the ALJ will give that opinion. 20 C.F.R. § 416.927(c)(3). The Commissioner, not a claimant's physician, is responsible for determining whether the claimant is statutorily disabled. 20 C.F.R. § 404.1527(d)(1). Specifically, "[a] statement by a medical source that [a claimant is] 'disabled' or 'unable to work' does not mean that [the Commissioner] will determine that [the claimant is] disabled." *Id.* Although a claimant may provide a statement containing a physician's opinion of her remaining capabilities, the ALJ will evaluate such a statement in light of the other evidence presented and the ultimate determination of disability is reserved for the ALJ. 20 C.F.R §§ 404.1513, 404.1527, 404.1545.

Here, the Appeals Council did not err by declining to consider the new evidence Griffin submitted because some of the evidence was dated after the ALJ's decision and thus not chronologically relevant, and the remaining evidence, including Dr. Nichols's evaluation, was immaterial because it was in conflict with the other record evidence and thus unlikely to change the administrative result. First, Dr. Feist's mental health statement did not cite to any medical evidence to support his conclusions that the limitations existed beginning in July 2012. He merely indicated the limitations via the questionnaire and did not provide any reference to Griffin's medical records from the relevant time period to support his

7

conclusion that the limitations did apply during the relevant time period.  It is likely that the ALJ would not give weight to the conclusions in this mental health statement because it did not reference any supporting evidence from the medical record. 20 C.F.R. § 416.927(c)(3). Similarly, Dr. Feist's letter regarding the emotional support animal did not cite to any medical records to support his prescription, so the ALJ would likely not give weight to any conclusion from the letter. Further, Dr. Feist's letter indicated only that Griffin had a mental disability that caused functional limitations and anxiety, a conclusion that the ALJ already reached.

Second, Dr. Feist's and Dr. Nichols's conclusions about Griffin's limitations during the relevant time period, from January 2016 to July 2018, were not supported by the other record evidence. Dr. Feist concluded that the various limitations, including that Griffin would not be able to maintain attention, concentration, and/or pace for periods of at least two hours, perform activities within a schedule and be punctual within customary tolerances, or adjust to routine frequent work changes, existed beginning in July 2012.  Dr. Nichols concluded that Griffin was unable to maintain attention and pace for periods of at least two hours or a regular schedule with punctuality, was unable to maintain a regular job without missing more than one to two days per month, and was unable to sustain an ordinary work routine without the need for special supervision. She found that

8

he was unable to seek and accept instructions from supervisors or to maintain appropriate appearance, behavior, or social interaction in a workplace. These findings are not supported by, and often in conflict with, the bulk of the record evidence. For example, records from Dr. Feist's examinations of Griffin between February 2015 and November 2017 consistently showed that, although Griffin was presenting with anxiety and depression, he had adequate concentration, appropriate behavior, and fair insight and judgment, and he was either moderate or low risk. Even when Griffin reported suffering from hallucinations, Dr. Feist concluded in September 2017 that his insight and judgment were good, his thought processes were logical, his concentration and attention were adequate, his energy and motivation were good, and his behavior was appropriate. After Griffin's overdose, when he saw Dr. Feist in November 2017, Griffin reported that recently his medication was working very well, he was sleeping great, and his hallucinations were improving. Dr. Feist found that Griffin's insight and judgment were good, his thought content was logical, and his concentration and attention were adequate. These evaluations conflict with the findings that Griffin would not be able to pay attention or perform work tasks within a schedule or that he would not be able to maintain appropriate workplace appearances or behavior.

Further, the records from between January 2014 and September 2017 from Griffin's visits to Dr. Johnson consistently showed that, although Griffin had

9

generalized anxiety disorder and suffered from some depression, Griffin's anxiety was improving greatly with medication, he had a calm mood and stable nerves, he was better able to rest and cope with daily stresses, and he did not have homicidal or suicidal ideation. Dr. Johnson consistently maintained that Griffin was oriented and had a normal mental status during this time. Further, during Griffin's visits between May 2016 and September 2017, he consistently reported that his anxiety was manageable with medication, noting that his anxiety worsened slightly after stopping Valium. He denied hallucinations, delusions, abnormal thinking, nervousness, or depression. Dr. Johnson did not observe any anxiety, delusion, loose associations, flight of thought, stressed facies, or weeping during these visits. Records from February, March, and April 2013 showed that Griffin denied any anxiety or depression during that time.  All of these records conflicted with the conclusions that Drs. Feist and Nichols made because they showed that Griffin consistently maintained a normal mental status, benefitted from continuing his medication, was able to complete his daily tasks, and frequently did not report or exhibit any anxiety or depression during those visits. *Hargress*, 883 F.3d at 1309-10.

Further, the evidence that Dr. Nichols cited to in her evaluation was the same record evidence already considered by the ALJ and used to determine that Griffin did suffer from severe depression and PTSD. The ALJ also already

10

attributed several limitations to Griffin based on the evidence examined by Dr. Nichols, including the required breaks in the workday included in the RFC as well as limiting his interaction with and exposure to other people and changes in the workplace. Thus, the ALJ already acknowledged that Griffin had severe mental impairments and concluded that the limitations listed in the RFC were sufficient to account for the severity of his impairments as shown by the record evidence. Finally, given the ALJ's reasoning for denying Griffin's application—specifically its reasoning that Griffin's symptoms appear to improve when he is on medication—Dr. Nichols's conclusion that his most severe symptoms were a result of his inability to stay on his prescribed medications would not change the ALJ's decision and is in fact consistent with it.

Accordingly, the new evidence was either not chronologically relevant or immaterial. Thus, the Appeals Council was not required to consider it, and it is therefore not necessary to address Griffin's argument that the denial of benefits was not supported by substantial evidence when this new evidence is considered. *Hargress*, 883 F.3d at 1310. Accordingly, we affirm.

**AFFIRMED.**